**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 95-50807.

TEXAS PHARMACY ASSOCIATION, et al., Plaintiffs,

Texas Pharmacy Association, formerly known as Texas Pharmaceutical Assn., Ron's Apothecary, Inc., Tri Cities' Pharmacy, Inc., City Pharmacy, Hamlin Pharmacy, Anderson Drug, Twelve Oaks Pharmacy, South Houston Pharmacy, Davila Pharmacy, Medical Center Pharmacy, Eilers Discount Pharmacy, Professional Pharmacy, Hart Pharmacy, Hays Hometown Pharmacy, Ward's Pharmacy, Good's Pharmacy, Klein's Discount Pharmacy, Avondale Pharmacy, Home Care Associates, Inc., Winn's Pharmacy, Tomball Atrium Pharmacy, Rosebud Pharmacy, Maxwell Pharmacy, Save-Mor # 1 Pharmacy, McCrory's Pharmacy, Nichols Southside Pharmacy, Nichols Westwood Pharmacy, Pfenning Prescriptions Pharmacy, Bel-Aire Drugs, S & L Drug Mart and Prescription Lab of Spring Branch, Plaintiffs-Appellees,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.

Feb. 14, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before REAVLEY, GARWOOD and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal concerns whether a Texas "any willing provider" statute applicable to pharmacies is preempted by the Employee Retirement Income Security Act (ERISA).[1] The Texas Pharmacy Association (TPA) and several pharmacies brought suit in Texas state court seeking a declaratory judgment that the statute compels appellant Prudential Insurance Company of America (Prudential) to contract with any pharmacy in Texas willing to accept Prudential's

---

[1] 29 U.S.C. §§ 1001-1461.

contractual terms and conditions.  Prudential removed the case to federal court, claiming that the statute is preempted by ERISA. The district court ruled by summary judgment that the 1991 statute is not preempted because it regulates insurance under ERISA's savings clause.  We hold that the current statute is preempted, but we agree that the statute prior to 1995 amendments is not preempted.

BACKGROUND

The essential facts are few and undisputed.  Prudential offers group health insurance policies to employers in Texas.  It also contracts to provide administrative services only to self-funded employer health plans.  For participants and beneficiaries of both types of plans—the employees and their covered family members—Prudential maintains several health care networks, including pharmacy networks.  In these networks, Prudential contracts with certain pharmacies and allows participants to fill their prescriptions at these pharmacies at predetermined dispensing fees and drug prices.  Prudential claims that the networks provide for quality control and lower prices.

In 1991, the Texas legislature passed an "any willing provider" statute pertaining to pharmacies.  The statute was amended in 1995 and now provides in part:

Sec. 2. (a) A health insurance policy *or managed care plan* ... may not:

(1) prohibit or limit a person who is a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider under the policy to furnish pharmaceutical services offered or provided by that policy or interfere with that person's selection of a pharmacy or pharmacist;

(2) deny a pharmacy or pharmacist the right to participate as a contract provider under the policy *or plan* if the pharmacy or pharmacist agrees to provide pharmaceutical services that meet all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy *or plan;*

(3) require a beneficiary of a policy *or participant in a plan* to obtain or request a specific quantity or dosage supply of pharmaceutical products.[2]

The emphasized portions of the statute were added by the 1995 amendments. The amendments also added a section broadly defining a "managed care plan" to include "a health maintenance organization, a preferred provider organization, or another organization that, under a contract or other agreement entered into with a participant in the plan ... provides health care benefits...."[3]

The parties argue the effect of the 1995 statute in this appeal and, unless otherwise announced, it is that current statute we will discuss.

The effect of the statute is that any pharmacist willing to abide by the terms of a Prudential network contract must be admitted to the network. The statute declares void any provision of a health insurance policy or managed care plan that conflicts with it.[4] The statute does however exempt from the any-willing-provider requirement "a self-insured employee benefit plan that is subject to [ERISA]."[5]

---

[2]TEX. INS.CODE ANN. art. 21.52B, § 2 (West Supp.1997).

[3]*Id.* § 1(6).

[4]*Id.* § 3.

[5]*Id.* § 5.

DISCUSSION

A. *ERISA's Preemption Clause*

Prudential argues that the Texas statute is preempted by ERISA. We agree that the current statute is preempted. ERISA's preemption clause provides that it preempts any and all state laws which "relate to" an ERISA benefit plan.[6] The Supreme Court has held that this preemption clause is "deliberately expansive"[7] and that a state law relates to an ERISA plan "if it has a connection with or reference to such a plan."[8] We have held that the preemption clause "is to be construed extremely broadly."[9]

As the district court found and as the TPA concedes, the state statute relates to ERISA benefit plans under the preemption clause. Garden variety employer health insurance plans, which are regulated by the Texas statute, are "employee benefit plans" under ERISA, defined to include "any plan ... established or maintained by an employer ... for the purpose of providing ... through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness...."[10] In *CIGNA*

---

[6]29 U.S.C. § 1144(a).

[7]*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

[8]*Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

[9]*Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1328 (5th Cir.), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992).

[10]29 U.S.C. § 1002(1)(A).

*Healthplan of Louisiana v. Louisiana,*[11] discussed below, we held that a Louisiana any-willing-provider statute fell within the preemption clause.[12]  As with the Louisiana statute at issue in *CIGNA,* the Texas statute relates to ERISA plans because it "eliminates the choice of one method of structuring benefits,"[13] by prohibiting plans from contracting with pharmacy networks that exclude any willing provider.

B. *ERISA's Savings Clause*

1. *The Current Statute*

Although the state statute relates to ERISA benefit plans under ERISA's preemption clause, the TPA argues that it nevertheless is not preempted because of ERISA's savings clause, which provides that "nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance...."[14] The TPA contends that the statute, which exempts employer self-insured ERISA plans, falls within the savings clause.

We hold that the statute does not fall within the savings clause, as this result is compelled by our recent decision in *CIGNA,* where we held that a Louisiana any-willing-provider statute did not fall within the savings clause.  The Louisiana statute provided that any willing provider may join a preferred provider

---

[11]82 F.3d 642 (5th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 387, 136 L.Ed.2d 304 (1996).

[12]*Id.* at 647–49.

[13]*Id.* at 648.

[14]29 U.S.C. § 1144(b)(2)(A).

organization if he agrees to the terms and conditions of the contract between a preferred provider organization and its health care providers.[15] We followed the test given in *Metropolitan Life Ins. Co. v. Massachusetts*[16] in deciding whether the statute fell within the savings clause:

> In [*Metropolitan Life* ], the Supreme Court delineated the requirements that a statute must meet to come within the insurance facet of the savings clause. As we have noted in prior opinions, the Court took a conjunctive two-step approach: "First, the court determined whether the statute in question fitted the common sense definition of insurance regulation. Second, it looked at three factors: (1) Whether the practice (the statute) has the effect of spreading the policyholders' risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. If the statute fitted the common sense definition of insurance regulation *and* the court answered "yes' to *each* of the questions in the three part test, then the statute fell within the savings clause exempting it from ERISA preemption." Thus, if a statute fails either to fit the common sense definition of insurance regulation or to satisfy any one element of the three-factor *Metropolitan Life* test, then the statute is not exempt from preemption by the ERISA insurance savings clause.[17]

We held that the statute was preempted because it did not meet the third requirement of the three-part test, that it apply exclusively to entities within the insurance industry:

> When we begin to apply that test to Louisiana's Any Willing Provider Statute, we may start and finish with the third factor of the *Metropolitan Life* test: On its face, Louisiana's statute obviously is not "limited to entities within the insurance industry." Even though the statute lists insurers as one group covered by its terms, it also specifies,

---

[15]LA.REV.STAT. ANN. § 40:2202(5)(c) ("No licensed provider ... who agree to the terms and conditions of the preferred provider contract shall be denied the right to become a preferred provider to offer health services within the limits of his license.").

[16]471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

[17]*CIGNA,* 82 F.3d at 650 (quoting *Tingle v. Pac. Mut. Ins. Co.,* 996 F.2d 105, 108 (5th Cir.1993)).

> in a non-exclusive list, that it applies to "self-funded organizations, Taft-Hartley trusts, or employers who establish or participate in self funded trusts or programs," as well as "health care financiers, third party administrators, providers, or other intermediaries." As the statute fails to meet the third factor of the *Metropolitan Life* test, we affirm the district court's holding that the statute is not saved from preemption by the insurance exception of § 514(b) of ERISA.[18]

*Id.*

Applying the same analysis, the Texas statute in the present case does not fall within the savings clause because it is not limited to entities within the insurance industry. Instead, it also applies to health maintenance organizations (HMOs), preferred provider organizations (PPOs), and other organizations that provide health care services. Indeed, since the statute defines managed care providers to include HMOs, PPOs or "another organization" that provides health care benefits, it applies to ERISA benefit plans themselves. The "deemer provision" of ERISA prohibits treating ERISA employee benefit plans themselves as being engaged in the business of insurance. It states that "an employee benefit plan ... [shall not] be deemed to be an insurance company or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies...."[19]

Several examples demonstrate that the statute is not directed exclusively to insurers. If an individual, outside of his employment, signs up with an HMO, he may or may not have insurance, yet under the statute the HMO would be subject to the any-willing-provider provision. Similarly, a self-insured employer

---

[18]*CIGNA,* 82 F.3d at 650.

[19]29 U.S.C. § 1144(b)(2)(B).

is not subject to the any-willing-provider provision, but if the employer signed up with an HMO or PPO, those organizations would be subject to the statute, even if there is no insurance company involved. If a group of pharmacies wanted to offer discount prescription services to an employer or other organization, such a group would constitute a PPO or "other organization" subject to the any-willing-provider requirement, whether or not an insurance company was involved. And if an employer offered a medical plan through an insurance company that did not pay for prescriptions, but wanted to contract with a pharmacy to provide prescription services outside of the insurance plan, the employer would be subject to the statute. Under the statute, the employer would be "another organization" providing health care benefits and would not be self-insured under the statutory exception to the preferred-provider-provision.

The TPA, in the final footnote of its brief, suggests that if the statute is preempted because it does not apply exclusively to insurers, then we should find preemption only insofar as the statute regulates non-insurers. Stated another way, the TPA suggests that the preempted portions of the statute are severable. We reject this argument for three reasons. First, *CIGNA* implicitly rejected this argument. It did not hold the statute valid as to PPOs offered by or affiliated with insurers. Second, our court has recognized as an independent requirement for the applicability of the savings clause that the state statute "be limited to entities within the insurance industry."[20] This requirement would be

---

[20]*CIGNA,* 82 F.3d at 650; *Tingle,* 996 F.2d at 108.

meaningless if a court could simply sever out those portions of the statute which applied to noninsurance entities.

Third, the Texas statute is not severable because it so states. Whether portions of a state statute found to contravene federal law are severable is a question of state law.[21] The Texas statute, as originally enacted in 1991, provides that "[i]f any provision of this Act or if application to any person or circumstance is held invalid, this entire Act is invalid and to that end the provisions of this Act are not severable."[22] There is no indication in subsequent amendments to the statute that this provision does not continue to express the intention of the Texas legislature. Under the Texas Code Construction Act, a Texas statute should be deemed severable if the invalidity of one provision does not affect the other provisions, unless it has an express provision for severability or nonseverability.[23] Here there is an express nonseverability provision.

We note an irony in the result reached. Insurance companies were no doubt the principal proponents of the McCarran-Ferguson Act (disguised *infra*) and the ERISA savings clause, because they did not want federal regulation of their industry. Here, however, the insurance company is arguing against state regulation and in favor of federal preemption. There is room to doubt if ERISA's drafters intended that it would preempt any-willing-provider statutes. We

---

[21]*United States Dep't of Treasury v. Fabe,* 508 U.S. 491, 508-10 & n. 8, 113 S.Ct. 2202, 2212 & n. 8, 124 L.Ed.2d 449 (1993).

[22]TEX. INS.CODE ANN. art. 21.52B note (West Supp.1997).

[23]TEX. GOV'T CODE § 311.032.

nevertheless conclude that the result in this case is compelled by the unmistakable breadth of ERISA preemption recognized by the Supreme Court.  A different result will require further guidance from the Supreme Court or further action from Congress.

2. *The Prior Statute*

We question whether a ruling on the validity of the old statute is of much value to the parties, but note that the 1995 amendments apply only to "an insurance policy or evidence of coverage under a managed care plan that is delivered, issued for delivery, or renewed on or after January 1, 1996."[24]  Conceivably there are unexpired contracts covered by the old statute.

We conclude that the old statute is not preempted by ERISA. Under the first step of the *Metropolitan Life* test, discussed *supra,* we are satisfied that the statute fits within the common sense definition of insurance regulation.  It directly regulates the terms of health insurance policies that can be offered in Texas, by, among other things, disallowing (1) policies that prohibit a beneficiary from selecting a pharmacy of the beneficiary's choice, (2) policies that deny willing pharmacists from participating as a contract provider under the policy, and (3) policies that require a beneficiary of a policy to obtain or request a specific quantity or dosage supply of pharmaceutical products.

The second step in *Metropolitan Life* looks to three factors. The second factor—whether the statute regulates an integral part of the policy relationship between the insurer and the insured—is met,

---

[24]TEX. INS.CODE ANN. art. 21.52B note (West Supp.1997).

since the statute directly regulates which pharmacist the beneficiary can select, and the quantity or dosage supply of pharmaceutical products. The third factor is also met, since, unlike the statute in *CIGNA,* the old statute is limited to insurance policies. It does not regulate entities outside the insurance industry. The first factor—whether the practice has the effect of spreading the policyholders' risk—requires further analysis. Prudential argues that this requirement is not met, particularly in light of the Supreme Court's decision in *Group Life & Health Ins. Co. v. Royal Drug Co.*[25]

In *Royal Drug,* an appeal from the Fifth Circuit, the plaintiff pharmacies sued Blue Shield, an insurance company, for antitrust violations. Blue Shield claimed that its actions were exempt from the antitrust laws under the McCarran-Ferguson Act.

In determining the scope of the ERISA savings clause, the Supreme Court has turned to case law interpreting the McCarran-Ferguson Act.[26] This Act provides that state laws "regulating the business of insurance" are not preempted by federal law.[27] We have held that deciding whether ERISA's savings clause exempts insurance regulation from preemption involves the same analysis used in deciding whether the regulation concerns the "business of insurance" under the McCarran-Ferguson Act. "The [ERISA] savings clause preserves the right of States, given by the McCarran-

---

[25]440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).

[26]*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987).

[27]15 U.S.C. § 1012.

Ferguson Act, to regulate the "business of insurance.' Consequently, to determine whether a State law is exempt from ERISA preemption, a court should examine the meaning of the phrase "business of insurance' in the McCarran-Ferguson Act."[28]

In *Royal Drug,* Blue Shield had entered into pharmacy agreements with participating pharmacies in Texas, as Prudential has done in the present case. The agreements fixed prices and the method of reimbursement to the pharmacies. Insureds who went to participating pharmacies paid only $2 per prescription, and the pharmacies were then reimbursed by Blue Shield. If on the other hand the insured selected a pharmacy which did not have an agreement with Blue Shield, he was required to pay the full cost and then seek reimbursement from Blue Shield under a fixed formula. Blue Shield offered the pharmacy agreements to all licensed pharmacies in the state.[29]

The Court held that these agreements were not the business of insurance since they "do not involve any underwriting or spreading of risk, but are merely arrangements for the purchase of goods and services by Blue Shield."[30] The Court further reasoned that "the business of insurance relates to the contract between the insurer and the insured," and that the agreements in issue were separate contractual arrangements between Blue Shield and pharmacies.[31]

---

[28]*Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1453 (5th Cir.1991) (citations omitted).

[29]*Royal Drug,* 440 U.S. at 209, 99 S.Ct. at 1072.

[30]*Id.* at 214, 99 S.Ct. at 1075.

[31]*Id.* at 215-216, 99 S.Ct. at 1075-1076.

We conclude that *Royal Drug* is distinguishable. The focus of the Court in *Royal Drug* is clear: "The only issue before us is whether the Court of Appeals was correct in concluding that these Pharmacy Agreements are not the "business of insurance' within the meaning of s 2(b) of the McCarran-Ferguson Act."[32] The Court's ruling, in our view, turned on the fact that "[t]he Pharmacy Agreements are not "between the insurer and the insured,' "[33] and the Court explained that "[t]his is not to say that the contracts offered by Blue Shield to its policyholders, as distinguished from its provider agreements with participating pharmacies, may not be the "business of insurance' within the meaning of the Act."[34]

Unlike the third-party pharmacy agreements in *Royal Drug,* the prior Texas statute directly regulated the terms of the insurance policy between the insurer and the insured. Both *Metropolitan Life* and *Royal Drug* explain that in enacting the McCarran-Ferguson Act Congress was concerned with: "The relationship between the insurer and insured, *the type of policy which could be issued,* its reliability, interpretation, and enforcement—these were the core of the "business of insurance.' "[35] *Metropolitan Life* goes on to state that "[n]or is there any contrary case authority suggesting that laws regulating the terms of insurance contracts should *not* be

---

[32]*Id.* at 210, 99 S.Ct. at 1072.

[33]*Id.* at 216, 99 S.Ct. at 1075.

[34]*Id.* at 230 n. 37, 99 S.Ct. at 1082 n. 37.

[35]*Metropolitan Life,* 471 U.S. at 744, 105 S.Ct. at 2391 (quoting *SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568-69, 21 L.Ed.2d 668 (1969); emphasis supplied in *Metropolitan Life); Royal Drug,* 440 U.S. at 215-16, 99 S.Ct. at 1075).

understood as laws that regulate insurance."[36]

The prior Texas statute regulated the type of policy which an insurer could offer in Texas.  On this basis we find *Royal Drug* distinguishable.  Further, we believe that the statute would affect the spreading of risks among policyholders and therefore meets the first requirement of the *Metropolitan Life* three-part test.  By requiring policies to give the beneficiary the option of obtaining pharmaceutical services from any pharmacy, and requiring pharmacy networks to admit any willing provider, we believe that the prior statute influenced which costs were ultimately borne by the insurer and which were borne by the beneficiary, and whether insurers would be willing to offer pharmacy coverage at all.

In this regard, we agree with the reasoning of the Fourth Circuit in *Stuart Circle Hospital Corp. v. Aetna Health Management.*[37]  In that case the court held that a Virginia any-willing-provider statute regulating PPOs was not preempted by ERISA.  The court held that the statute had a sufficient effect on the spreading of policyholders' risk to satisfy the *Metropolitan Life* test:

> If a PPO unreasonably restricts the providers of treatment, even though they meet the insurer's standards, it denies an insured the choice of doctor or hospital that may best suit the insured's needs, unless the insured is willing and able to pay all or part of the cost of the doctor or hospital that is not preferred by the insurer.  This is a restriction of the insured's benefits.  By its prohibition against unreasonable restriction of providers, the Virginia statute spreads the cost component of the policyholder's risk among all the insureds, instead of requiring the policyholder to shoulder

---

[36]*Metropolitan Life,* 471 U.S. at 744, 105 S.Ct. at 2391 (emphasis in original*).*

[37]995 F.2d 500 (4th Cir.1993).

all or part of this cost when seeking care or treatment from an excluded doctor or hospital of his or her choice.... [A]lthough facially the statute only directly affects providers, it indirectly affects the insured's choice of provider and the consequent cost to the insured if he or she deems an excluded provider to be better qualified for treatment of a specific illness or accident. In this way it affects the risk that an insured must bear.[38]

We agree with this analysis, and note that the prior Texas statute had an even more direct effect on the policyholder's choice of provider. Unlike the Virginia statute, the Texas statute expressly mandated that insurance policies cannot "prohibit or limit a person who is a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider under the policy to furnish pharmaceutical services offered or provided by that policy or interfere with that person's selection of a pharmacy or pharmacist."[39]

### CONCLUSION

The judgment of the district court is affirmed insofar as it held that the statute, prior to the 1995 amendments, was not preempted by the federal ERISA statute. For the reasons explained above, however, we hold that the current version of the statute is preempted.

AFFIRMED AS MODIFIED.

---

[38]*Id.* at 503-04.

[39]TEX. INS.CODE ANN. art. 21.52B, § 2(a)(1) (West Supp.1997). This subsection was not changed by the 1995 amendments.