IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 98-20940

---

CORPORATE HEALTH INSURANCE, INC.;
AETNA HEALTH PLANS OF TEXAS, INC.;
AETNA HEALTH PLANS OF NORTH TEXAS, INC.;
AETNA LIFE INSURANCE COMPANY,

                    Plaintiffs - Appellees - Cross-Appellants,

                              versus

THE TEXAS DEPARTMENT OF INSURANCE,

                              Defendant - Cross-Appellee,

JOSE MONTEMAYOR, Commissioner of the
Texas Department of Insurance;
JOHN CORNYN, Attorney General, State of Texas,

                    Defendants - Appellants - Cross-Appellees.

---

Appeal from the United States District Court
For the Southern District of Texas

---

June 20, 2000

Before HIGGINBOTHAM and PARKER, Circuit Judges, and ATLAS, District Judge.[*]

HIGGINBOTHAM, Circuit Judge:

Large changes in the delivery systems for medical services, including the growth of health maintenance organizations ("HMOs") and managed care organizations ("MCOs"), came as rapid responses to rising costs for medical services and to the growth of medical

---

[*]District Judge of the Southern District of Texas, sitting by designation.

expense reimbursement for employees. These new entities injected an intermediary between doctor and patient in setting medical care charges and making payments; at the same time, the insurance industry began to offer administrative services to employers and to contract with doctors for services at set rates. Billions of dollars now flow through these structures, generating equally large difficulties of governance and daily tensions between quality and quantity.

Through much of this period, the preemptive reach of ERISA made regulation of this market largely a federal enterprise, shared with the states at its juncture points with insurance. Today we decide questions regarding the ability of the State of Texas to regulate the quality of health services when such efforts impose a duty of care upon service providers to ERISA plans.

I

This suit is a preemption challenge to Texas's Senate Bill 386.[1] Through that legislation, Texas asserted its police power to protect its citizens in regulating the new field of managed health care in three ways. First, it created a statutory cause of action against managed care entities that fail to meet an ordinary care standard for health care treatment decisions (the "liability" provisions). Second, it established procedures for the independent

_____

[1]Codified at TEX. CIV. PRAC. & REM. CODE § 88.001 et seq.; TEX. INS. CODE art. 20A.09(e) (formerly (a)(3)), 20A.12(a) and (b), 20A.12A, 21.58A §6(b) and (c), 21.58A §6A, 21.58A §8(f) & 21.58C.

2

review of health care determinations to decide whether they were appropriate and medically necessary (the "independent review" provisions). Finally, it protected physicians from HMO-imposed indemnity clauses and from retaliation by HMOs for advocating medically necessary care for their patients.

The plaintiffs, Corporate Health Insurance, Inc., Aetna Health Plans of Texas, Inc., Aetna Plans of North Texas, Inc. and Aetna Life Insurance Company,[2] are not ERISA plans. Aetna Health Plans of Texas is an HMO licensed by the State of Texas that contracts with more than 2,900 independent health care providers and 39 hospitals. Aetna Life Insurance Company sells various health insurance products to employers, including programs available through a preferred provider organization. In Texas, nearly one million individuals participate in a managed care program of Aetna or one of its affiliated entities.

Senate Bill 386 became effective on May 22, 1997. Aetna promptly filed suit in the United States District Court, claiming that the Act was preempted by ERISA's general preemption clause, section 514, which preempts "any and all state laws insofar as they . . . relate to any employee benefit plan"[3] and by the Federal Employees Health Benefit Act ("FEHBA").[4] The plaintiffs named as

---

[2]We will refer to the plaintiffs generally as "Aetna."

[3]29 U.S.C. § 1144(a).

[4]5 U.S.C. § 8901 et seq.

defendants John Cornyn, the Attorney General of Texas, Jose Montemayor, Commissioner of the Texas Department of Insurance, and the Department of Insurance itself. The Commissioner remains a party, but the Department of Insurance has been dismissed.[5]

The parties filed cross-motions for summary judgment, which the district court granted in part and denied in part. The district court found no FEHBA or ERISA preemption of the liability provisions of Senate Bill 386 but found that ERISA preempted the anti-retaliation, anti-indemnification, and independent review provisions of the legislation. Both Aetna and Texas appeal.

II

Texas argues that Aetna lacks standing to challenge the Act's new standards for liability. Texas contends that Aetna has not suffered the requisite injury under Article III because Aetna has thus far been exposed to a duty of care and will have standing only if it defends a private suit for the breach of that duty. Texas concedes that Aetna has standing to challenge the other provisions given the Commissioner's oversight authority.

Aetna replies that it has standing because the liability provisions expose it not only to private suits but also to the regulatory reach of the Attorney General. We agree. This is not

_____

[5]We will refer to the defendants generally as "Texas." The United States Secretary of Labor is charged with interpreting and enforcing all provisions of Title I of ERISA, see 29 U.S.C. 1001 et seq., but not FEHBA. The Secretary filed an amicus brief and participated in oral argument in this case. We will refer to the Secretary as the federal government.

4

a case in which private suits are the only means of enforcing a challenged statutory standard.  The Attorney General can pursue Aetna through an action under the Texas Deceptive Trade Practices Act and the Insurance Code.[6]  This regulatory oversight is sufficient to create the requisite imminent injury for standing.

## III

We have repeatedly struggled with the open-ended character of the preemption provisions of ERISA and FEHBA.[7]  We faithfully followed the Supreme Court's broad reading of "relate to" preemption under § 502(a) in its opinions decided during the first twenty years after ERISA's enactment.  Since then, in a trilogy[8] of cases, the Court has confronted the reality that if "relate to" is taken to the furthest stretch of its indeterminacy, preemption will never run its course, for "really, universally, relations stop

---

[6]On the Attorney General's right of action, see TEX. INS. CODE ANN. art. 21.21 § 15(a); TEX. BUS. & COM. CODE ANN. § 17.47.  Relevant provisions imposing liability include TEX. INS. CODE ANN. art. 21.21-2 §2(b)(5) (unfair and deceptive to compel policyholders to institute suits to recover amounts due); art. 21.21 §4(10)(ii) (prohibiting the failure to pay claims when liability has become reasonably clear); id. at art. 21.21-2(B)(4) (same).

[7]See, e.g., CIGNA Healthplan of La., Inc. v. Louisiana, 82 F.3d 642 (5th Cir. 1996); Corcoran v. United HealthCare, Inc., 965 F.2d 1321 (5th Cir. 1992).

[8]De Buono v. NYSA-ILA Med. & Clinical Serv's Fund, 117 S. Ct. 1747 (1997); California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 117 S. Ct. 832 (1997); New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 115 S. Ct. 1671 (1995).

nowhere."[9]   Justice Souter, speaking for a unanimous court in Travelers, acknowledged that "our prior attempt to construe the phrase 'relate to' does not give us much help drawing the line here."  Rather, the Court determined that it "must go beyond the unhelpful text . . . and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."[10]

In Travelers, a New York statute required hospitals to collect surcharges from patients insured by a commercial carrier but not from certain HMOs.  The plain purpose of the surcharge was to encourage the HMOs to provide open enrollment coverage.  The Second Circuit found that the surcharges "related to" ERISA plans because they imposed economic burdens with an impermissible impact on plan administration and structure.  In rejecting the Second Circuit's approach, and in shifting its own approach, the Court observed that such indirect economic influences "d[id] not bind plan administrators to any particular choice," but rather affected the costs of benefits and the "relative costs of competing insurance to provide them."[11]  The Court grounded the "relate to" clause in the complex realities of the market for medical services.

Dillingham, the second of the trilogy, came two terms later.

---

[9]Travelers, 115 S. Ct. at 1677.

[10]Id.

[11]Id. at 1679.

The case challenged a California law which required public works contractors to pay a prevailing wage but allowed lower wages to be paid in qualified apprenticeship programs. A unanimous Court found the law not preempted, holding that regulation of the underlying industry of which the employers were members does not require preemption. The Court began with the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."[12] Justice Scalia, in a concurring opinion joined by Justice Ginsburg, urged the Court to acknowledge directly that it had returned to traditional preemption analysis and that "relate to" states no special test but rather identifies the field in which ordinary field preemption applies.[13]

Four months later, the Court handed down De Buono, upholding New York's tax on gross receipts for patient services at health care facilities. The Court again rejected the theory that the effects of even a direct tax on an ERISA plan required a finding of preemption. The Court was persuaded that the tax was not the type of state law that Congress intended ERISA to preempt.[14]

In each of these three cases, the Court was returning to a traditional analysis of preemption, asking if a state regulation

---

[12]Dillingham, 117 S. Ct. at 838 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

[13]Id. at 843 (Scalia, J., concurring).

[14]De Buono, 117 S. Ct. at 1752.

frustrated the federal interest in uniformity.[15]  This analysis is similar to the Court's approach in determining whether state law is preempted by federal common law[16] – even there, where the conflict between federal policy and state law need not be as sharp as for preemption when Congress legislates in a field that the states have traditionally occupied, the Court has insisted on a significant conflict with an "identifiable federal policy or interest."[17]  And significantly for our case, this return has included the observation that a broader reading of "relates to" would sweep away common state action with indirect economic effects on the costs of health care plans, such as quality standards which may vary from state to state.

IV

This brings us to the merits of the claim that Senate Bill 386 is preempted.  We turn first to its liability provisions.  In Section 88.002, the bill provides:

> A health insurance carrier, health maintenance organization, or other managed care entity for a health care plan has the duty to exercise ordinary care when making health care treatment decisions and is liable for damages for harm to an insured or enrollee proximately caused by its failure to exercise such ordinary care.[18]

---

[15]See also Boggs v. Boggs, 117 S. Ct. 1754 (1997) (analyzing whether state community property law frustrates federal interests in determining ERISA preemption).

[16]Boyle v. United Tech Corp., 487 U.S. 500 (1988).

[17]Boyle, 487 U.S. at 507.

[18]TEX. CIV. PRAC. & REM. CODE ANN. § 88.002(a) (1999).

8

The statute gives "health care treatment decision" a defined meaning:

> [A] determination made when medical services are actually provided by the health care plan and a decision which affects the quality of the diagnosis, care, or treatment provided to the plan's insureds or enrollees.[19]

The Act also defines the agents for whose health care decisions the entities can be vicariously liable.[20] Further, the Act includes a disclaimer: it avoids imposing any obligation on the entity "to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity."[21]

Aetna argues that the liability provisions "relate to" an ERISA plan and affect plan administration. Aetna contends that a claim that medical services were negligently provided will inevitably question the provider's determinations of coverage under an ERISA plan. Texas replies that Senate Bill 356 has avoided the difficult genre of cases complaining of medical care and service which were not provided by excluding a duty to provide treatment not covered by a plan.

We agree with Texas's interpretation of the Act. When the liability provisions are read together, they impose liability for a limited universe of events. The provisions do not encompass claims based on a managed care entity's denial of coverage for a

---

[19]§ 88.001(5).

[20]§ 88.002(b).

[21]§ 88.002(d).

medical service recommended by the treating physician: that dispute is one over coverage, specifically excluded by the Act. Rather, the Act would allow suit for claims that a treating physician was negligent in delivering medical services, and it imposes vicarious liability on managed care entities for that negligence.

This vicarious liability does not "relate to" the managed care provider's role as an ERISA plan administrator or affect the structure of the plans themselves so as to require preemption. Courts have observed that HMOs and MCOs typically perform two independent functions -- health care insurer and medical care provider.[22] A managed care entity can provide administrative support for an insurance plan, which may entail determining eligibility or coverage. At the same time, a managed care entity can act as an arranger and provider of medical treatment.

Although state efforts to regulate an entity in its capacity as plan administrator are preempted,[23] managed care providers operate in a traditional sphere of state regulation when they wear their hats as medical care providers. ERISA preempts malpractice suits against doctors making coverage decisions in the administration of a plan, but it does not insulate physicians from

---

[22]See Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 360-61 (3d Cir. 1995); Lancaster v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc., 958 F. Supp. 1137, 1139 n.2 (E.D. Va. 1997).

[23]Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 9 (1987).

10

accountability to their state licensing agency or association charged to enforce professional standards regarding medical decisions.[24] Such accountability is necessary to ensure that plans operate within the broad compass of sound medicine. We are not persuaded that Congress intended for ERISA to supplant this state regulation of the quality of medical practice.[25] While it may impose some indirect costs on ERISA plans, the Court has considered such effects too tenuous to require preemption.

We also are not persuaded that the liability provisions are preempted as "referring to" ERISA plans. Under this strain of preemption analysis, we examine whether the law acts immediately and exclusively upon ERISA plans or whether the existence of an ERISA plan is essential to the law's operation.[26] A law does not

---

[24]This distinction is consistent with Corcoran's holding that medical decisions involving coverage determinations are preempted.

[25]The Second, Third, and Seventh Circuits have held that medical negligence claims against HMOs for vicarious and direct liability are not within the scope of § 502(a) and, therefore, are not completely preempted because they involve conduct by the HMO in its capacity as a provider and arranger of health services and not as plan administrator. See Rice v. Panchal, 65 F.3d 637, 646 (7th Cir. 1995) (vicarious claims); Dukes, 57 F.3d at 356 (vicarious and direct claims); Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 272 (2d Cir. 1994) (direct claims). District courts have also allowed suit for vicarious liability. See Ray v. Value Behavioral Health, Inc., 967 F. Supp. 417, 423-24 (D. Nev. 1997); Yanez v. Humana Medical Plan, Inc., 969 F. Supp. 1314, 1316 (S.D. Fla. 1997); Schachter v. Pacificare of Okla., Inc., 923 F. Supp. 1448, 1451 (N.D. Okla. 1995); Chaghervand v. CareFirst, 909 F. Supp. 304, 311 (D. Md. 1995); Smith v. HMO Great Lakes, 852 F. Supp. 669, 671-72 (N.D. Ill. 1994).

[26]See Dillingham, 117 S. Ct. at 837-38.

11

"refer to" ERISA plans if it applies neutrally to ERISA plans and other types of plans.[27] Aetna asserts that the definitions of "health care treatment decision" and "health care plan" refer to ERISA plans because they make reference to "plans."[28] We disagree. The provisions are indifferent to whether the health care plan operates under ERISA and do not rely on the existence of ERISA plans for their operation.[29]

We see nothing to take the liability provisions from the regulatory reach of states exercising their traditional police powers in regulating the quality of health care. A suit for medical malpractice against a doctor is not preempted by ERISA simply because those services were arranged by an HMO and paid for by an ERISA plan. Likewise, the vicarious liability of the entities for whom the doctor acted as an agent is rooted in general principles of state agency law. Seen in this light, the Act simply

---

[27]Id. at 839; see also District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 127 (1992) (holding law referred to ERISA plans because it targeted employers to provide certain health insurance coverage to their employees, an obligation under law by reference to ERISA). Our decision in CIGNA is distinguishable: there, the statute contained an explicit reference to employers. CIGNA, 82 F.3d at 648.

[28]See § 88.001(2) and (5).

[29]We also decline to hold the entire Act preempted on the basis that some of its independent review provisions are codified in a statute that includes an explicit exclusion of ERISA plans. Even if such mention required preemption of the exclusionary provision itself (a provision not challenged in this suit), or of other statutory provisions which it affected, it could have no preemptive effect on the Act's provisions codified elsewhere in the Texas Code.

12

codifies Texas's already-existing standards regarding medical care. These standards of care are at the heart of Texas's regulatory power.

V

We turn to the anti-retaliation and anti-indemnification provisions under sections 88.002(f) and (g) of the Act. The anti-retaliation provision forbids a managed care entity from dropping or refusing to renew a doctor or health care provider for advocating medically necessary treatment.[30] The anti-indemnification provision prohibits a managed care entity from including an indemnification clause in its contracts with doctors and other health care providers that would hold it harmless for its own acts.[31] Aetna contends that these provisions improperly mandate the structure and administration of ERISA plan benefits because ERISA plans are forced to contract with doctors only on those terms.

We are not persuaded that these provisions mandate the structure and administration of plans. Our analysis again stems from our recognition that HMOs and MCOs perform functions both as health care insurers and as medical care providers. The anti-indemnity and anti-retaliation rules govern the managed care entities as health care providers by regulating the terms on which

---

[30]See TEX. CIV. PRAC. & REM. CODE § 88.002(f).

[31]See § 88.002(g).

13

the provider contracts with its agents. The rules do not compel the entities to provide any substantive level of coverage as health care insurers.

Our past cases addressing "any willing provider" statutes are consistent with this analysis. In those cases, the state statutes at issue required managed care entities to contract with any pharmacy willing to do business on the entity's terms.[32] Because those state laws essentially mandated that plan beneficiaries could choose from a larger pool of providers, they affected substantive plan benefits in a way that the provisions at issue here do not.[33]

The anti-retaliation and anti-indemnity provisions complement the Act's liability provisions by realigning the interests of managed care entities and their doctors. The liability and indemnity provisions force the managed care entity to share in its doctors' risk of tort liability; the anti-retaliation provision avoids the situation in which the doctor must choose between satisfying his professional responsibilities and facing retaliatory action by the managed care entity. Together, the provisions thus better preserve the physician's independent judgment in the face of the managed care entity's incentives for cost containment. Such a

_____

[32]See Texas Pharmacy Ass'n v. Prudential Ins. Co., 105 F.3d 1035, 1036 (5th Cir. 1997); CIGNA, 82 F.3d at 645.

[33]In addition, those cases were decided before Dillingham and DeBuono. The Texas Pharmacy court noted that its holding was only valid pending further guidance from the Supreme Court. See Texas Pharmacy, 105 F.3d at 1039-40.

14

scheme is again the kind of quality of care regulation that has been left to the states.[34]

                                VI

We come to the statute's provisions for independent review of determinations by managed care entities. The authorization for such review is codified at several locations in the Texas Code.

The first set of provisions, codified in section 88, allows suit against an entity only after the patient has followed an independent review procedure.[35] The provision describes the patient's complaint as "the claim," which refers back to the basis of the cause of action.[36] This language allows independent review only of claims for which patients may bring suit under the liability provisions. As such, the review provisions are not preempted. Any duty imposed on managed care entities by the independent review provisions extends no further than that imposed by the liability provisions. Moreover, because the 1999 amendments to the section make such review voluntary on the entity's part,[37]

---

[34]The Supreme Court's most recent discussion of ERISA confirms this analysis. In Pegram v. Herdrich, the Court held that ERISA confers no cause of action against HMOs for providing incentives to their doctors for limiting the costs of testing and treatment. Part of the Court's reasoning was that states are currently allowed to impose malpractice liability on HMOs for such action. 530 U.S. ____, [24] (June 12, 2000).

[35]See TEX. CIV. PRAC. & REM. CODE § 88.003.

[36]See id.

[37]See § 88.003(a) and (c).

15

the entity cannot complain that the provision is at odds with its duties under ERISA.

Another set of provisions, codified at various sections of the Insurance Code,[38] does not appear to so limit independent review. The Act adds procedures through which patients may appeal "adverse determinations" --

> [A] determination by [an HMO] or utilization review agent that the health care services furnished or proposed to be furnished to an enrollee are not medically necessary or are not appropriate.[39]

The Act further requires that a utilization review agent "comply" with the independent review organization's determination of medical necessity.[40]

It is apparent that "adverse determinations" include determinations by managed care entities as to coverage, not just negligent decisions by a physician. The provisions allow a patient who has been denied coverage to appeal to an outside organization.[41]

---

[38]See TEX. INS. CODE art. 20A.09(e) (codified in 1997 at 20A.09(a)(3)) and 20A.12A (amendments to the Texas Health Maintenance Organization Act); 21.58A §6(b) and (c) and §6A (amendments to the Utilization Review Agent Act).

[39]Art. 20A.12A(a)(1) (codified in 1997 in slightly amended form at 20A.12(c)(1)).

[40]Art. 21.58A §6A(3). The provision refers specifically to "utilization review agents" for insurers and administrators. HMOs are directed to follow the rules applicable to utilization review agents. See art. 20A.12A(b).

[41]Texas notes that the provisions of the Act codified in the state's utilization review agent ("URA") statute, Tex. Ins. Code art. 21.58A, may not even apply to ERISA plans. The URA statute includes an exclusion for ERISA plans – "This article shall not

16

Such an attempt to impose a state administrative regime governing coverage determinations is squarely within the ambit of ERISA's preemptive reach.[42]

VII

Texas and the federal government urge that the preempted independent review provisions are saved under ERISA's saving clause for laws regulating insurance.[43] The Supreme Court has interpreted the clause as designed to preserve Congress's reservation of the business of insurance to the states under the McCarran-Ferguson Act.[44] In determining whether the clause applies, the Supreme Court considers whether the rule regulates insurance as a commonsense matter, looking as well to the three McCarran-Ferguson factors as "guideposts:" (1) whether the practice has the effect of transferring or spreading the policyholder's risk; (2) whether it is an integral part of the policy relationship between the insured

_____

apply to the terms or benefits of employee welfare benefit plans as defined in . . . [ERISA]." § 14(e). Texas states that its Insurance Commissioner generally treats such provisions as excluding self-funded ERISA plans, not insured ERISA plans. To the extent the provisions regulate insurers for ERISA plans, they still "relate to" ERISA plans and are preempted.

[42]This preemption does not reach three provisions of the Act codified in the Insurance Code which do not create a right to independent review: TEX. INS. CODE art. 21.58C (setting forth general standards and rules for independent review organizations); 21.58A §8(f) (confidentiality provision); and 20A.12(a) and (b) (making minor changes to preexisting provision).

[43]29 U.S.C. § 1144(b)(2)(A) (1999).

[44]See Metropolitan Life Ins. v. Massachusetts, 471 U.S. 724, 744 n.21 (1985).

17

and the insurer; and (3) whether the practice is limited to entities in the insurance industry.[45] The law need not satisfy each of these tests.[46]

The common sense test measures whether the law is specifically directed toward the insurance industry.[47] A law is so aimed when the state has developed a specific scheme governing insurance, as opposed to a flexible rule used in many legal contexts.[48] Here, the independent review provisions create a regulatory scheme governing health benefit determinations. They do not rely on general legal rights used in other areas of law.

That the provisions apply to managed care entities as well as to traditional insurers does not exclude them from the saving clause. In determining whether a statute regulates the insurance industry, courts have examined whether a statute governs only entities <u>acting</u> as insurers. A statute may regulate insurance if it applies to insurers, health care service contractors, and HMOs.[49] If the law sweeps more broadly, however, covering employers and

---

[45]See <u>UNUM Life Ins. Co. v. Ward</u>, 119 S. Ct. 1380, 1386 (1999).

[46]See <u>Ward</u>, 119 S. Ct. at 1389.

[47]See <u>id.</u> at 1387-88.

[48]See <u>id.</u> (law met the common sense test because the state had developed a specific scheme governing the rights of an insured); <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 51 (1987) (the state's common law of bad faith, developed from tort and contract law generally, was not an integral part of the policy relationship).

[49]See <u>Washington Physicians Serv. Ass'n v. Gregoire</u>, 147 F.3d 1039, 1045 (9th Cir. 1998).

others not engaged in insurance practices, it cannot be said to be regulating insurance.[50]  Our own cases are consistent with this distinction.[51]  Here, the preempted provisions apply to HMOs[52] and to utilization review agents for insurers, administrators, and non-ERISA health benefit plans.[53]  In making benefit determinations, these entities are functioning as insurers.

The common sense test also considers whether the law plays an integral part in the policy relationship between the insured and the insurer.  Laws that create a mandatory contract term between the parties, including procedural requirements, go to the core insured-insurer relationship.[54]  Here, the independent review provisions create a procedural right of the insured against the entity.  As the independent review provisions are aimed at insuring entities and regulate the insured-insurer relationship, they meet the common sense test of the saving clause.

For the same reasons, the provisions satisfy the second and third prongs of the McCarran-Ferguson test: they are integral to

---

[50]See Prudential Ins. Co. of America v. National Park Med. Ctr., Inc., 154 F.3d 812, 825 (8th Cir. 1998) (distinguishing Gregoire based on scope of statute).

[51]See Texas Pharmacy, 105 F.3d at 1039 (not insurance regulation where law applied to employers and pharmacy groups as well as HMOs); CIGNA, 82 F.3d at 650 (not regulation where rule applied to self-funded organizations and employers).

[52]See TEX. INS. CODE art. 20A.12A.

[53]See 21.58A § 2(21); § 14(e) (excluding ERISA plans).

[54]See Ward, 119 S. Ct. at 1390 & n.5.

19

the policy relationship and regulate the insurance industry. While the provisions probably do not meet the first factor of reallocating the risk between the insured and insurer, that failure is not fatal to Texas's saving clause claim.

Our analysis does not end here, however, because even if the provisions would otherwise be saved, they may nonetheless be preempted if they conflict with a substantive provision of ERISA.[55] In Pilot Life v. Dedeaux, the Supreme Court held that "our understanding of the saving clause must be informed by the legislative intent concerning [ERISA's] civil enforcement provisions."[56] The Court interpreted Congress's intent regarding the exclusivity of ERISA's enforcement scheme very broadly, concluding that the scheme preempts not only directly conflicting remedial schemes, but also supplemental state law remedies.[57] Thus, the saving clause does not operate if the state law at issue creates an alternative remedy for obtaining benefits under an ERISA plan.[58]

Here, the independent review provisions do not create a cause

---

[55]See id. at 1390.

[56]Pilot Life, 481 U.S. at 52. ERISA's enforcement provisions are set out at 29 U.S.C. § 1132.

[57]Id. at 56.

[58]See Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489, 493-94 (9th Cir. 1988); In re Life Ins. of North America, 857 F.2d 1190, 1194-95 (8th Cir. 1988). But see Franklin H. Williams Ins. Trust v. Travelers Ins. Co., 50 F.3d 144, 151 (2d Cir. 1995).

of action for the denial of benefits. They do, however, establish a quasi-administrative procedure for the review of such denial and bind the ERISA plan to the decision of the independent review organization. This scheme creates an alternative mechanism through which plan members may seek benefits due them under the terms of the plan – the identical relief offered under § 1132(a)(1)(B) of ERISA. As such, the independent review provisions conflict with ERISA's exclusive remedy and cannot be saved by the saving clause.[59]

### VIII

Aetna argues that all of the provisions at issue are preempted by the terms of plans operating under FEHBA, the statute governing federal employee health insurance. The preemption language of that statute reads:

> The terms of any contract under this chapter . . . which relate to the nature, provision, or extent of coverage or benefits (including payment with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.[60]

The statute was amended in 1998 to add a "relate to" clause like that in ERISA.

The provisions of the Texas Act that we have held do not

---

[59] In <u>Ward</u>, the Supreme Court noted the federal government's change in position since <u>Pilot Life</u> on the issue of whether a provision in conflict with ERISA's enforcement provision is nevertheless saved by the saving clause. Because the issue was not necessary to the resolution of the case, however, the Court declined to revisit it. <u>See</u> <u>Ward</u>, 119 S. Ct. at 1390 n.7.

[60] 5 U.S.C. § 8902(m)(1) (1999).

21

"relate to" ERISA plans similarly would not "relate to" any FEHBA plans because they do not concern coverage or benefits.[61]   As we have construed those provisions, they address only managed care entities' duties as health care providers, not as insurers.  While Congress has an identifiable federal interest in providing uniform benefits to government employees,[62] there is no significant conflict here between that interest and Texas's regulation of quality of medical care.  And we decline to require FEHBA preemption simply because state regulation might indirectly increase the costs of managed care.

As to the independent review provisions which would be ERISA-preempted, we find that FEHBA plans would preempt such review under general conflict principles.  The independent review provisions specifically conflict with the administrative remedy provided by the Office of Personnel Management concerning benefits disputes.[63]

IX

As we have found some of the Act's provisions preempted, we must consider whether they are severable from the remainder of the statute.   Severability   turns   on   the   intent   of   the   state

---

[61]See also Negron v. Patel, 6 F. Supp.2d 366, 371 (E.D. Pa. 1998) (vicarious liability claim not preempted by FEHBA).

[62]See Caudill v. Blue Cross & Blue Shield of N.C., 999 F.2d 74, 78 (4th Cir. 1993).

[63]5 U.S.C. § 8902(j); 5 C.F.R. § 890.105 - 890.107; see also Bryan v. Office of Personnel Management, 165 F.3d 1315, 1318 (10th Cir. 1999) (FEHBA creates only one remedy for the administrative review of benefit denials).

22

legislature; we examine whether the provisions are so independent that the legislature would have passed the remaining statute without the disallowed provisions.[64]

After the district court's determination holding the IRO provisions preempted, the Texas Legislature passed a bill making those procedures optional as to the liability provisions.[65] Although that amendment does not apply to the independent review provisions we have held preempted, we find it instructive as to the legislature's intent regarding independent review generally. As the district court noted, it appears that the legislature was concerned both with the quality of care and with denials of care. While the review provisions regarding the denial of care are preempted under ERISA and FEHBA, we find that the legislature would nonetheless wish to give effect to those provisions targeting the quality of care.

We sever articles 20A.12A, 21.58A § 6(c), and 21.58A §6 A, as well as those portions of 20A.09(e) and 21.58A § 6(b) amended by the Act, from the remainder of the Act and hold them preempted. We conclude that the liability provisions of the Texas statute, and the independent review provisions insofar as they are merely a prerequisite to the filing of suit, are preempted neither under ERISA nor FEHBA because they allow suit only for health services

---

[64]See Association of Tex. Educators v. Kirby, 788 S.W.2d 827, 830 (Tex. 1990).

[65]See Tex. S.B. 1884, 76th Leg., R.S. (1999), Bill Analysis.

23

actually delivered, not for coverage disputes.  We also find that the anti-indemnity and anti-retaliation provisions are not preempted: they too address traditional state concerns regarding the quality of health care.

AFFIRMED IN PART; REVERSED IN PART.