**UNITED HEALTHCARE INSURANCE CO., et al., Plaintiffs,**

v.

**Bruce A. LEVY, M.D., et al., Defendants.**

**No. Civ.A. 3:00CV0569M.**

United States District Court, N.D. Texas, Dallas Division.

Sept. 8, 2000.

Brian Goode Hamilton, Charles Martin Hosch, Strasburger & Price, Dallas, TX, for Plaintiff.

Christopher D. Livingston, Attorney General of Texas Financial Litigation Division, Austin, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

LYNN, District Judge.

Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed May 12, 2000. Having considered the briefing and the applicable law, as well as the arguments of counsel at a hearing held on June 6, 2000, the Court **DENIES** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. At the hearing, Defendants conceded that the Court had jurisdiction to determine the preemption question under the authority of the Employment Retirement Income Security Act of ("ERISA"), Section 514(a), as amended, 29 U.S.C. § 1144(a). The Court concludes, under the circumstances presented in this case, that ERISA mandates preemption of the matters as to which Defendants seek to act.

### I. Background

The basic facts pertinent to this Motion are undisputed. This action stems from a person's complaint to the Texas State Board of Medical Examiners ("the Board") regarding a coverage determination made by a medical director (for purposes of this lawsuit, referred to pseudonymously as "Dr. John Doe," or "Doe") employed by United Healthcare Services, Inc., which is a utilization review agent for United Healthcare Insurance Company (collectively, "United Healthcare"). United Healthcare acts as a third-party administrator for a self-funded ERISA plan sponsored by Allstate Insurance Company ("Allstate"). By letter dated August 21, 1998. Doe was informed that the Board was investigating a complaint filed against him for unprofessional conduct, specifically a violation of § 3.08(4) of the Texas Medical Practice Act. This investigation was related to an alleged inappropriate determination which Doe made in connection with a denial of coverage for private-duty nursing care for D.W. (a minor), under an ERISA-governed employee benefit plan.

D.W.'s attending physician, Dr. Sami Hadeed ("Hadeed") had requested coverage for long-term private duty nursing care, to be provided at the home of D.W.'s parents following D.W.'s discharge from a five week stay at Fort Worth Cook Children's Hospital, where D.W. had been admitted for serious respiratory difficulties. On behalf of United Healthcare, Doe contacted Hadeed to discuss the rationale for the requested services. According to the only evidence in the record. Hadeed indicated to Doe that the purpose for the nursing services was to provide respite to D.W.'s family by supplementing the long-term care required for the child that would otherwise be provided by his family. As Doe described what Hadeed said, the goal was not to train D.W.'s caretakers or to work toward resolution of a specific health problem, but rather, to provide respite to the parents. Based on this information, Doe determined that the requested services constituted "custodial care," as that term was defined by Allstate's Insurance Benefit Plan ("the Plan"), and that such services were specifically excluded from coverage under the Plan. With this understanding of the purpose of the request for long-term private duty nursing care, it was Doe's opinion (and ultimately the opinion of two other physicians who reviewed the matter at the request of United Healthcare) that the Plan, by its contractual terms, did not provide coverage for such care, provided as respite to D.W.'s family. Doe communicated this coverage determination to Hadeed, as well as to D.W.'s family.

On June 9, 1998, subsequent to the benefit determination made by Doe, Allstate initiated an appeal of the denial of benefits. The claim was sent for an internal review to a United Healthcare pulmonologist, who also spoke with Hadeed and who, on June 18, 1999, concurred in the denial of benefits. Thereafter, Allstate requested an external review of the claim by an independent physician. In connection with this request, United Healthcare requested that D.W.'s parents execute a consent to release certain medical records so that the external review could be conducted.

D.W.'s parents failed to execute the consent or to pursue the external review any further, apparently because another insurer agreed to provide, and then did provide, coverage for the requested care. Because the parents' consent was not given, United Healthcare was unable to proceed with the external review, and therefore proceeded with a second internal review by a different medical director. That director also concurred in the denial of coverage, based upon the Plan's exclusion for "custodial care."

It is this, Doe's coverage determination, that resulted in the Board's investigation.[1] On February 22, 2000, the Board[2] issued a proposed Agreed Order memorializing its recommended "findings of fact," including a finding that Doe "recommended treatment" contrary to Hadeed's written orders, "including the denial of authorization for skilled nursing care at home following discharge from the hospital." The Board's proposed findings of fact also set out the Plan's definition of the term "custodial care." and based on its interpretation of that term, the Board concluded that Hadeed's orders "indicated that the medical needs of patient D.W. went beyond [Doe's] employer's definition of custodial care."

Per the terms of the February 22, 2000 letter forwarding the proposed Agreed Order, Doe had two options. If he accepted the Agreed Order, then the Board would enter it. If he rejected the terms, then the Board would refer the matter to the State Office of Administrative Hearings for a formal hearing before an administrative judge.

This lawsuit was filed on March 15, 2000. Specifically, Plaintiffs (United Healthcare and Doe) sued, in their official capacities, eighteen members of the Board and its executive director (collectively referred to as "the Board"), seeking a declaratory judgment that the Board's efforts constitute an attempt to regulate an ERISA-governed plan, by conducting its own benefit determinations and assessing penalties and fines against a third-party administrator and fiduciary, and that such conduct is (1) preempted under ERISA; (2) violative of ERISA's enforcement provisions; (3) violative of the Plan's terms, and (4) violative of state law. In addition, Plaintiffs seek injunctive relief under federal and state law to enjoin the agency from taking any further action against Doe, and United Healthcare seeks injunctive relief against the Board from taking additional action against any of its employees who are making pure coverage determinations.

In response to Plaintiffs' Complaint, on May 12, 2000, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. Specifically, Defendants argue that Congress did not intend for ERISA to preempt a state's ability to regulate the practice of medicine within its borders, and that, therefore, ERISA does not confer

---

1. The factual record before the Court is undisputed as to Doe's conversation with Hadeed, and Doe's subsequent decision to deny certain benefits as not covered by the Plan. As a preliminary and critical matter, the Court concludes that these undisputed facts establish that Doe's decision was a pure coverage determination. Doe decided that the services described and recommended by Hadeed were not reimbursable under the terms of the Plan, based on the Plan's definition of "custodial care." Doe never diagnosed, treated, or offered to treat D.W. *See* TEX.OCC.CODE ANN. § 151.001(a)(13) (defining the "practice of medicine"). Nor did Doe recommend treatment, or make any finding of medical necessity as to medical care to be administered to D.W. It is upon these facts, and these facts

only, that the Court proceeds. Accordingly, the question of whether a physician acting as a utilization review agent who exercises medical judgment to determine what is medically necessary for a patient's care, and/or who otherwise engages in the "practice of medicine" as defined by the Texas Medical Practice Act, is subject to the Board's regulatory authority is left for determination on another day in another case.

2. Two members of the Board were assigned to oversee the initial review and investigation of Doe's conduct. Although not entirely clear from the record, apparently these two members, on behalf of the entire Board, drafted the proposed Agreed Order which prompted the filing of this suit.

jurisdiction on this Court to substitute its judgment for that of the Board. Defendants argue, therefore, that this case should be dismissed for lack of subject matter jurisdiction.

The question before the Court is whether ERISA preempts the Board's regulation of a coverage determination, not predicated on a determination of medical necessity, by a physician acting for a third-party health care administrator.[3] For the reasons set forth below, the Court answers this question in the affirmative. Therefore, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED.

## II. Analysis

Section 514(a) of the Employee Retirement Income Security Act of 1974 was enacted by Congress to create a uniform welfare and pension statute which superseded any state law that "relate[s] to" any covered employee benefit plan. Specifically, § 514(a) of ERISA states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a). . . . [4]

During roughly two decades, the Supreme Court repeatedly determined that this language called for broad preemption, resulting in the Court's finding in numerous cases that a variety of state laws "relate[d] to" and touched upon employee benefit plans, and were, therefore, preempted. *See, e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In fact, the Supreme Court concluded that a "state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. 478 (holding that a state common law claim, asserting a wrongful discharge to prevent attainment of benefits under an ERISA-covered plan, "relates to" a benefit plan and is therefore; preempted). Similarly, the Court held that even state laws which were consistent with ERISA were preempted, no matter how tangentially or indirectly they related to an employee benefit plan. *See, e.g., Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (finding that a state statute's express reference to ERISA plans brings it within ERISA's preemptive reach). Thus, the Court has held that a state law "related to" an ERISA plan if the law either: (1) had a "reference to," or (2) had a "connection with" such plan. *Shaw,* 463 U.S. at 97, 103 S.Ct. 2890.

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State and local governments, or any instrumentality thereof, which have the force or effect of law.
> *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1328 n. 11 (5th Cir.1992) (quoting 120 CONG.REC. 29933 (1974)).

---

**3.** Originally, Defendants argued, in the alternative, that the Court had no jurisdiction because Doe failed to exhaust his administrative remedies. However, during the June 6, 2000 hearing, Defendants conceded that the Court had jurisdiction to decide the ERISA preemption question and that further factual and/or procedural development of this case at the state administrative level was not necessary. Accordingly, Defendants' argument for dismissal due to failure to exhaust has been waived.

**4.** Relevant to the issue at hand, Senator Williams, one of ERISA's sponsors, argued:

■ More recent Supreme Court authority, however, reflects a more limited view of the scope of ERISA preemption. Today, preemption analysis "go[es] beyond the unhelpful text and the frustrating difficulty of defining 'relates to.'" *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In cases where ERISA is alleged to preempt "state action in fields of traditional state regulation," the starting point of preemption analysis is the "presumption that Congress does not intend to supplant state law." *Id.* at 654–55, 115 S.Ct. 1671 Thus, courts are required to "begin ... with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *Id.* at 655, 115 S.Ct. 1671. No longer is there "uncritical literalism" in applying the preemption provision. *Id.* at 656, 115 S.Ct. 1671. In its place, the Supreme Court has substituted a more pragmatic approach, designed to ascertain Congressional intent to preempt. *Id.; see also California Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (following the pragmatic approach announced in *Travelers*); *DeBuono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (same).

In *Travelers,* the Supreme Court determined that the Second Circuit's broad interpretation of "relates to" would result in a situation where, "for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere.'" *Travelers,* 514 U.S. at 655, 115 S.Ct. 1671 (citation omitted). Based on this reasoning, the Supreme Court reversed the Second Circuit's finding that ERISA preempted a statute authorizing a hospital's collection of surcharges from patients covered by a commercial insurer,

but not from patients insured by a Blue Cross/Blue Shield Plan or HMOs. In finding no preemption, the Supreme Court held that "historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 655, 115 S.Ct. 1671.

In *Dillingham,* the Supreme Court determined that ERISA did not preempt a California law which required payment of a prevailing wage to public works contractors, but allowed a lower wage for apprentices in qualified programs. *Dillingham,* 519 U.S. at 319, 117 S.Ct. 832. Although the law presumptively fell within traditional "relates to" analysis, the Supreme Court relied on its decision in *Travelers* and again rejected the literal interpretation of the phrase "relates to." *Id.* at 327–32, 117 S.Ct. 832. The Court determined that there was nothing in the language of ERISA or any legislative history to show that Congress intended preemption to apply under the facts there presented. *Id.* at 331, 117 S.Ct. 832.[5]

Likewise, in *DeBuono,* the Court found no preemption because the specific law at issue, taxing gross receipts for patient services at health care facilities, "clearly operates in a field that 'has been traditionally occupied by the States.'" *De Buono,* 520 U.S. at 814, 117 S.Ct. 1747. The Court held that respondents could not meet their burden of establishing preemption because there was nothing in the language of ERISA to show Congressional intent to preempt such general health care regulation by the states. Rather, the Court concluded that the particular law before it was one of a "myriad of state laws" of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not "relate to" them within the meaning of the statute. *Id.* at 815, 117 S.Ct. 1747.

**5.** Justice Scalia, in a concurring opinion joined by Justice Ginsburg, urged the Court to acknowledge expressly that it had returned to traditional preemption analysis and that "relate to" states no special test but merely identifies the "field" so that the Court can then determine if the field was to be preempted by a clear federal policy. *Dillingham,* 519 U.S. at 335–336, 117 S.Ct. 832.

The Supreme Court's ERISA preemption analysis now includes: (1) a presumption that Congress generally does not intend to preempt state laws; (2) a focus on the objectives of ERISA as a guide to Congressional intent on preemption; and (3) an analysis of the effect of the state law on the particular ERISA plan at issue. *See Travelers,* 514 U.S. at 655–57, 115 S.Ct. 1671; *De Buono,* 520 U.S. at 813–14, 117 S.Ct. 1747. With respect to the last issue, the Supreme Court has noted that "[w]e acknowledge that a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers, and that such a state law might indeed be preempted under § 514." *Travelers,* 514 U.S. at 668, 115 S.Ct. 1671.

■ Under this mandate, the Supreme Court has carved out two specific instances where ERISA preempts state law: (1) where state law mandates employee benefit structures or their administration, and (2) where state law provides alternative enforcement mechanisms to those provided by ERISA. *Id.* at 658, 115 S.Ct. 1671. This Court now turns to an analysis of whether preemption is appropriate under either or both of these instances.

### A. The Board's Regulation of Doe Mandates an Employee Benefit Structure

This Court recognizes that the regulation of medical decision-making is within a state's traditional authority to regulate matters relating to health care. *Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 339 (5th Cir.1999) (finding that health care is an area of traditional state regulation). This Court also acknowledges that under *Travelers,* "nothing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *Travelers,* 514 U.S. at 661, 115 S.Ct. 1671.

■ The Court is persuaded, however, that the Board's actions in this case constitute the mandating of employee benefit structures. By reaching its own determination about whether the nursing services requested by D.W. under the terms of the Allstate Plan were "custodial care," and by threatening suspension of Doe's license based on its own review of his benefit coverage determination, the Board effectively called for a *de facto* mandatory guideline for the determination of custodial care under the Allstate Plan, as well as any other plan with similar exclusions. Should Doe, or any other doctor, elect not to follow the mandates of the Board's determination of what is "custodial care," license suspension or other penalties will presumably result. Such a result creates that inconsistent and conflicting state regulation which ERISA's drafters sought to avoid. Because of this direct impact on the Plan, the Board's attempt to regulate Doe's benefit coverage determinations is, effectively, a mandate of the structure of the Plan's benefits and its administration.

In effect, the Board is substituting for the administrator's decision its own judgment of whether requested services fall within the Plan, an outcome at odds with the purpose for ERISA. Therefore, the Court concludes that ERISA preempts the Board from taking action against Doe in his capacity as a utilization review agent making a determination as to what constitutes "custodial care" under the Plan.

### B. The Board's Conduct Is an Alternative Enforcement Mechanism

In the alternative, this Court concludes that under the second *Travelers* basis for preemption. Defendants are providing an alternative enforcement mechanism to that found in ERISA. ERISA requires a claims review procedure for employee benefit plans. 29 U.S.C. § 1133. The Department of Labor has implemented specific regulations dictating how claims for plan benefits are to be reviewed, determined, and denials appealed. 29 C.F.R. § 2560.503–1. ERISA and federal regula-

tions govern the review of plan benefit denials. The Fifth Circuit has held that these internal appeal procedures are mandatory before a plan participant can file a lawsuit challenging the denial of benefits. *Brock v. Primedica, Inc.*, 904 F.2d 295, 297 n. 2 (5th Cir.1990) (dismissal of claim "warranted by [Plaintiffs'] failure to exhaust the ... Plan's administrative review procedure prior to initiating suit.") Plaintiffs argue that the Board, in effect, disregarded the statutory mechanism for the review of denied claims and the federal courts' mandate that it be used, and has instead set forth its own rules for how an ERISA plan should be administered.

The Board's proposed action is designed to ensure that the Plan is not interpreted in the same way again—which effectively provides plan participants with an alternative means, other than those enforcement mechanisms set out in ERISA, to enforce their rights. In other words, the Board is providing ERISA plan participants with the alternative of simply complaining to the Board about an adverse coverage determination. Because of the potential for suspension of the license of physicians for making a coverage determination different from that which the Board would make, the Board's review has a binding effect on the Plan and ensures that the Plan will be interpreted and administered in a way dictated by the Board. This is in direct contravention to ERISA's objective of avoiding a "multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657, 115 S.Ct. 1671.

In determining this issue, the Court relies on the Fifth Circuit's holding that allowing a state cause of action for malpractice based on an erroneous benefit coverage determination presents a "significant risk that state liability rules would be applied differently to the conduct of utilization review companies in different states." *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1333 (5th Cir.1992). In *Corcor-*

*an*, the Fifth Circuit found that a state law cause of action for malpractice based on a benefits determination[6] is preempted by ERISA. *Id.*

Defendants contend that *Corcoran* is ultimately distinguishable because it was brought by a beneficiary under a plan, unlike this case, in which the underlying action was brought by a regulatory agency. The Court finds this to be a distinction without a difference. Here, as in *Corcoran*, there was an attempt under state law to regulate, and supersede, a benefit coverage determination adverse to the insured. *Id.* at 1331. Therefore, whether the state action is based on a state common law claim or an administrative action, or whether the initiator of the action is a beneficiary or an administrative agency, the effect on ERISA is the same— the plan is subject to potentially conflicting state and federal directives, with preemption being the necessary consequence.

*Corcoran* was further analyzed in the recent Fifth Circuit case of *Corporate Health Ins. Inc. v. Texas Dept. of Ins.*, 215 F.3d 526 (5th Cir.2000), which held that "ERISA preempts malpractice suits against doctors making coverage decisions in the administration of a plan...." *Id.* at 534. Although the Fifth Circuit went on to hold, in language Defendants argue is dispositive, that such preemption "does not insulate physicians from accountability to their state licensing agency or association charged to enforce professional standards regarding medical decisions," *id.* this Court interprets such language to include *only* medical decisions, not pure coverage determinations of the type made here. Since the Board is not seeking to discipline Doe for a medical decision he made while treating D.W., but rather is attempting to discipline him because it disagrees with his determination that the care contemplated is excluded by the plan, this Court finds that such action is preempted under the

6. Ironically, the policy at issue in *Corcoran* was a United Healthcare policy.

authority of *Corcoran* and *Corporate Health*.[7]

In sum, although the U.S. Supreme Court's recent ERISA preemption analysis is significantly more restricted than it had been previously, this Court is persuaded, and therefore holds, that the Board's action, initiated by Doe's denial of coverage under the definitions in the Plan, is preempted by ERISA and is thus impermissible. The Board's action potentially mandates that Allstate change its definition of "custodial care." Furthermore, it provides an alternative enforcement mechanism, when one already exists under ERISA for a beneficiary who is denied coverage. Thus, the Board's attempted regulation, supervision and disciplining of one of United Healthcare's utilization review agents, based on this coverage determination, "relates to" employee benefit plans under ERISA within the meaning of § 514(a). 29 U.S.C. § 1144(a), and accordingly, is preempted.[8]

This Court certainly recognizes and understands the important role the State plays in regulating the health care industry, which historically has been, and re-mains, a matter of local concern. *See Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 719, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). However, such regulation and local concern does not extend to the regulation of pure coverage determinations of the type which occurred here.

## III. Conclusion

For the reasons stated, the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED. Given this result, Plaintiffs are directed to submit other proposed orders on the remaining relief requested which are consistent with this Opinion.

**SO ORDERED.**

---

**7.** *See also Corporate Health Ins., Inc. v. Texas Dept. of Ins.*, 220 F.3d 641 (5th Cir.2000), which is the recently issued opinion on the State's petition for rehearing. In that opinion, the Fifth Circuit concluded that *Pegram v. Herdrich*, ⸺ U.S. ⸺, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000), did not cast doubt on the validity of *Corcoran* or *Corporate Health*, as the State's petition argued. In *Pegram*, the Supreme Court held that mixed eligibility and treatment decisions made by an HMO through its physicians were not fiduciary acts under ERISA, and no federal claim for breach of fiduciary duty based on such decisions was stated; although the Court concluded the decision with a discussion of the fact that Congress did not generally intend to preempt state malpractice claims, it did not determine under what circumstances state regulation of physicians or common law malpractice claims relating to pure coverage might be preempted. *Id.* The Fifth Circuit stated in its opinion on the petition for rehearing in *Corporate Health*, "we do not read *Pegram* to entail that every conceivable state law claim survives preemption so long as it is based on a mixed question of eligibility and treatment, and *Corcoran* held otherwise." 220 F.3d 641, 2000 WL 1035524, at *1. This Court interprets such opinion to mean that *Corcoran* and *Corporate Health* are still valid law in the wake of *Pegram*.

**8.** To find otherwise would render meaningless:

[Congress's intent] to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal [being] to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government .... [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

*Ingersoll–Rand*, 498 U.S. at 142, 111 S.Ct. 478.