IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 98-20940

---

Corporate Health Insurance, Inc.;
Aetna Health Plans of Texas, Inc.;
Aetna Health Plans of North Texas, Inc.;
Aetna Life Insurance Company,
    Plaintiffs-Appellees-Cross-Appellants,

v.

The Texas Department of Insurance,
    Defendant-Cross-Appellee,

Jose Montemayor, Commissioner of the Texas Department of Insurance;
John Cornyn, Attorney General, State of Texas,
    Defendants-Appellants-Cross-Appellees.

---

Appeals from the United States District Court
For the Southern District of Texas

---

July 27, 2000
ON PETITION FOR REHEARING
(Opinion June 20, 2000, 5th Cir., 2000 ____F.3d____)

Before HIGGINBOTHAM and PARKER, Circuit Judges.[*]

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The State of Texas petitions for panel rehearing, urging reconsideration of that portion of our opinion in which we concluded that the Independent Review Organization (IRO) provisions appearing in the Texas Insurance Code were preempted. Texas contends that the panel factually misunderstood the IRO provisions

---

[*]This matter is being decided by a quorum, 28 U.S.C. 46(d).

and that the recent Supreme Court decision in <u>Pegram v. Herdrich</u>[1] cast doubt on both the panel opinion in this case and this court's prior decision in <u>Corcoran v. United HealthCare, Inc.</u>[2]

In <u>Pegram</u>, the Court held that mixed eligibility and treatment decisions that were made by an HMO acting through its physicians were not fiduciary acts under ERISA, and therefore no federal claim under ERISA for breach of fiduciary duty based on such decisions was stated.[3]  Texas points to the Court's observation that such a claim would duplicate state malpractice liability.[4]

The Court's holding in <u>Pegram</u> comports with our holding that certain liability provisions were not preempted, specifically direct liability for physicians' malpractice when making "health care treatment decisions" and the ensuing vicarious liability for the HMOs.[5]  However, we do not read <u>Pegram</u> to entail that every

---

[1]120 S. Ct. 2143 (2000).

[2]965 F.2d 1321 (5th Cir. 1992).

[3]120 S. Ct. at 2158.

[4]<u>See</u> <u>id.</u> at 2157-58.

[5]<u>Corporate Health v. Texas Dep't of Ins.</u>, No. 98-20940, 2000 WL 792345, at *4, *5 (5th Cir. June 20, 2000); <u>see</u> <u>also</u> <u>id.</u> at *5 n.34.  <u>But</u> <u>see</u> <u>Jass v. Prudential Health Care Plan, Inc.</u>, 88 F.3d 1482 (7th Cir. 1996).  In <u>Jass</u>, the Seventh Circuit held that vicarious liability claims against an HMO based on the malpractice of a treating physician were preempted because the necessary agency determination would require an analysis of the underlying health care benefit plan and thus would "relate to" the benefit plan.  <u>Id.</u> at 1493.
The alleged negligence at issue in <u>Jass</u>, however, was not the treating physician's negligent provision of services but rather the physician's failure to provide care once coverage had been denied. While that distinction was not the only basis for the court's holding, it was found to be significant.  <u>See</u> <u>id.</u> In our panel opinion, we expressly distinguished that situation and held only

2

conceivable state law claim survives preemption so long as it is based on a mixed question of eligibility and treatment,[6] and Corcoran held otherwise.[7]

In our panel opinion, we concluded that the IRO provisions allowed review of "adverse determinations" which included "determinations by managed care entities as to coverage, not just negligent decisions by a physician."[8] We held, however, that the IRO provisions "create[d] an alternative mechanism through which plan members may seek benefits due them under the terms of the plan–the identical relief offered under § 1132(a)(1)(B) of ERISA. As such, the independent review provisions conflict with ERISA's exclusive remedy and cannot be saved by the savings clause."[9]

Texas insists that the IRO provisions do not create an alternative mechanism for seeking benefits and do not improperly review coverage decisions. According to Texas, the IRO merely implements "a procedural right to obtain medical care . . . by imposing a mandatory insurance contract term that goes to the heart

---

that direct and vicarious liability claims were not preempted when based on the actual negligent provision of medical services. See Corporate Health, 2000 WL 792345, at *4-5.

[6]It may be that state causes of action persist only for actions based in some part on malpractice committed by treating physicians. If so, state causes of actions against HMOs for the decisions of their utilization review agents would still be preempted, as Corcoran held. Because Pegram did not exhaustively discuss the specific kinds of state causes of action that it implied were not preempted, we make no additional inferences.

[7]See 965 F.2d at 1332-33, 1326.

[8]See Corporate Health, 2000 WL 792345, at *6.

[9]Id. at *7.

of the insured-insurer relationship."[10]  The distinction is a fine one: the IRO provisions reflect Texas's effort to mandate and regulate the quality of medical care for a covered condition, but do not detail or provide a mechanism for determining or receiving benefits.

Under this view, the IRO provisions are alleged to be akin to the state law at issue in <u>Metropolitan Life Ins. Co. v. Massachusetts</u>,[11] which required certain insurers to provide a set level of mental health care as part of their plan policies.[12] Unlike the mandatory benefit provisions in <u>Metropolitan Life</u>, the IRO provisions allegedly regulate the minimal level of care not through a previously defined set of rules but through an interactive procedure involving independent review of proposed courses of treatment.

A determination by an IRO that a particular treatment is "medically necessary" for a diagnosed condition, however, entails that the treatment must be provided by the HMO – so long as the underlying condition is a covered condition under the plan – because that level of care has become, in some sense retrospectively, a mandatory term of the health plan.  This is so

---

[10]Petition for Panel Rehearing, at 13-14 (internal quotation marks omitted).

[11]471 U.S. 724 (1985).

[12]<u>See</u> <u>id.</u> at 731, 758 (holding that a state law mandating the provision of a particular level of mental health care – <u>viz.</u>, "60 days of coverage for confinement in a mental hospital, coverage for confinement in a general hospital equal to that provided by the policy for nonmental illness, and certain minimum outpatient benefits" – was saved from preemption).

because Texas requires HMOs through their utilization review agents to "comply" with the results of the IRO review.[13] According to Texas, however, IRO determinations result in a practical determination of coverage only because the HMO elected to define obligations under its plan in terms of "medical necessity," a standard uniquely within the province of Texas to regulate.

This ambitious spin on the IRO provisions is accented in Texas's petition for panel rehearing. While it is not without some persuasive force, it does not comport with our view of the record, which reflects that the IRO process binds HMOs to pay for treatment the IRO mandates and in so doing substitutes the medical judgment of a third party physician for the HMO's, or treating physician's, judgment as to medical necessity.

Our panel opinion does not hold or suggest that when implementing its police power, Texas cannot deploy an independent review mechanism to regulate the minimal quality level of medical care provided for covered conditions. Indeed, we explicitly approved an exhaustion requirement prerequisite to the filing of malpractice suits. At the same time, the law is clear that Texas cannot provide a supplementary claims process by binding the HMO to pay for a treatment that is simply a second opinion on medical necessity about which reasonable doctors might reach differing conclusions.

---

[13]See Corporate Health, 2000 WL 792345, at *6 & n.40 (citing TEX. INS. CODE art. 21.58A § 6A(3)).

5

We acknowledge that there is a powerful argument in support of an IRO procedure in which the only inquiry is whether a proposed treatment meets the standard of care demanded by Texas of physicians – *i.e.*, whether any reasonably prudent physician in the relevant community could have made the medical decision or prescribed the course of treatment.  The argument is that Texas can demand this level of care as a mandated term of insurance for covered conditions regardless of whether an HMO chooses to define the scope of its coverage in terms of its own definition of medical necessity.[14]

Under this view, what Texas can regulate through malpractice suits, Texas could also administratively regulate as a mandated term of insurance.  The independent review would not be a second opinion about which reasonable physicians might disagree.  Rather the inquiry would be confined to whether providing the medical services found to be necessary would constitute medical malpractice.  The ultimate contention is that Congress never intended to preempt a state's power to regulate the quality of medicine; that so confined the IRO is the natural companion of the provision authorizing suits for medical malpractice by treating physicians and brings symmetry to the structure.

Because the IRO provisions here are plainly a state regime for reviewing benefit decisions and not a system for implementing a

---

[14]Cf. UNUM Life Ins. Co. of Am. v. Ward, 119 S. Ct. 1380, 1390 (1999) (declining to find that an insurer can "displace any state regulation simply by inserting a contrary term in plan documents").

mandated term of insurance regulating a minimal standard of care, we have no occasion to decide whether that form of regulation could be saved, and, if so, implemented by regulations limiting the standard of review to the question of whether it will be medical malpractice to deliver the services determined to be necessary in the decision being reviewed. We remain persuaded that the original panel decision is sound and panel rehearing is DENIED.

The Petition for Rehearing is DENIED and no member of this panel nor judge in regular active service on the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is also DENIED.

MOTION FOR PANEL REHEARING and PETITION FOR REHEARING EN BANC DENIED.