In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2574

DEBRA C. MORAN,

Plaintiff-Appellant,

and

STATE OF ILLINOIS,

Intervenor-Appellant,

v.

RUSH PRUDENTIAL HMO,
INCORPORATED,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 442--Suzanne B. Conlon, Judge.


Argued April 18, 2000--Decided October 19, 2000


  Before FLAUM, Chief Judge, and RIPPLE and WILLIAMS,
Circuit Judges.

  RIPPLE, Circuit Judge.  Section 4-10 of Illinois'
Health Maintenance Organization Act ("the HMO
Act"), 215 ILL. COMP. STAT. ANN. 125/1-1 et seq.,
requires HMOs to submit to an independent
physician review when there is a disagreement
over whether a course of treatment is medically
necessary between a patient's primary care
physician and the HMO. In the event that the
independent reviewer determines that the
treatment is necessary, the HMO is required under
sec. 4-10 of the HMO Act to cover the treatment.

  Debra Moran's primary care physician recommended
a specific surgery for her, but Rush Prudential
HMO, Inc. ("Rush"), the service provider for Ms.
Moran's ERISA-governed medical benefits plan,
denied coverage for that surgery. Rush offered
instead to cover a less expensive surgery to be
performed by a Rush-affiliated doctor. At her own
expense, Ms. Moran underwent the surgery proposed
by her physician. She later sought to enforce her
rights under sec. 4-10 of the HMO Act by bringing

an action in state court. Rush removed the action to federal district court on ERISA preemption grounds. After additional proceedings, including a remand to state court and another removal by Rush, the district court granted summary judgment to Rush. The district court determined that sec. 4-10 of the HMO Act, and Ms. Moran's claims based on that act, were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. sec. 1001 et seq. The district court also concluded, upon reviewing Rush's decision to deny coverage, that Rush's denial of coverage was not improper. Ms. Moran now appeals./1 For the reasons set forth in the following opinion, we reverse the judgment of the district court.

I
BACKGROUND
A.

Ms. Moran is covered by a medical benefits plan sponsored by her husband's employer. The plan is governed by ERISA, and it is fully insured. Rush is the HMO provider for the plan. Two aspects of the plan are worth noting. First, the plan's member certificate delegates to Rush "the broadest possible discretion" to interpret the terms of the plan and to determine which benefits the participants are entitled to receive. R.1-1, Ex.A. at 7. Second, the certificate provides that services that are not "medically necessary" will not be covered by the plan. Id. at 21./2

B.

Starting in 1996, Ms. Moran began experiencing pain, numbness, loss of function, and decreased mobility in her right shoulder. Ms. Moran sought treatment for these symptoms from Dr. Arthur LaMarre, her primary care physician and a Rush-affiliated physician. At first Dr. LaMarre treated Ms. Moran through physiotherapy and other conservative therapies, but these efforts did not relieve her symptoms. While she was undergoing these conservative therapies, Ms. Moran obtained the name of Dr. Julia Terzis, an out-of-network surgeon in Virginia who specializes in microreconstructive surgery. After Rush denied Ms. Moran's request for a out-of-network referral to consult with Dr. Terzis, Ms. Moran traveled on her own accord to Virginia to be examined by Dr. Terzis. Dr. Terzis diagnosed Ms. Moran with brachial plexopathy and thoracic outlet syndrome ("TOS"), a nerve compression syndrome caused by the compression of nerves in Ms. Moran's brachial plexus.

Most nerve compression syndromes are mild and effectively treated with conservative

physiotherapy, and surgery is not indicated unless more conservative measures fail to manage the symptoms. If surgery becomes necessary, the standard procedure for TOS involves decompression by way of first rib resection (the complete removal of the uppermost rib) or first rib resection with scalenectomy (the removal of the rib and the attached muscle). If necessary, a surgeon may use loupe magnification, in which the surgeon wears a goggle-like apparatus to magnify the immediate view, to conduct a neurolysis, which is removal of scar tissue surrounding the injured nerve. Dr. Terzis, however, performs a more complicated surgery for patients with Ms. Moran's condition. Dr. Terzis' surgery consists of rib resection, extensive scalenectomy, and, if indicated, microneurolysis of the lower roots of the brachial plexus under intraoperative microscopic magnification. Dr. Terzis concluded that Ms. Moran was a candidate for the more complicated microneurolysis surgery. She also indicated to Ms. Moran that she had successfully treated other patients with Ms. Moran's condition.

After meeting with Dr. Terzis, Ms. Moran asked Dr. LaMarre to obtain approval from Rush for Dr. Terzis' proposed surgery. Dr. LaMarre first had Ms. Moran see two Rush-affiliated thoracic surgeons, Dr. Raymond A. Dieter and Dr. William H. Warren. After examining Ms. Moran, both doctors confirmed Dr. Terzis' diagnosis of TOS and recommended that Ms. Moran undergo the standard TOS surgery. Ms. Moran, however, was not impressed by the prognosis offered by these doctors, and she decided that she wanted to have Dr. Terzis perform her proposed surgery.

On October 14, 1997, Dr. LaMarre asked Rush to approve Dr. Terzis' microneurolysis surgery for Ms. Moran. In his recommendation letter, Dr. LaMarre stated that, in his opinion, Ms. Moran would be "best served" by having Dr. Terzis' procedure performed. R.45, Ex.5. Rush denied approval on the grounds that Dr. Terzis' surgery was out of network. Ms. Moran appealed the administrator's decision. In response to her appeal, Rush requested additional information from Dr. Dieter and Dr. Warren about Dr. Terzis' proposed surgery and the need for microneurolysis. Both doctors reported that microneurolysis was unnecessary for Ms. Moran. After reviewing the reports of Dr. Dieter and Dr. Warren, and after conducting its own analysis of relevant medical literature, Rush affirmed its denial of coverage for Dr. Terzis' microneurolysis surgery on the ground that the procedure was not "medically necessary" as defined by the plan. In a letter to Ms. Moran, Rush provided a detailed discussion of its

reasons for denying coverage for Dr. Terzis' proposed surgery and informed Ms. Moran that it would cover the standard TOS surgery, by a network surgeon, of first rib resection with scalenectomy. Ms. Moran then made a final appeal to Rush's Membership Advisory Committee, but the committee voted to uphold Rush's denial.

The next month, in February 1998, Ms. Moran underwent Dr. Terzis' microneurolysis surgery. The surgery took nearly 14 hours and, with post-operative care, cost $94,841.27. Ms. Moran paid for the surgery herself. Ms. Moran submitted a copy of the bill for her surgery to Rush, and she and Dr. Terzis also submitted other materials related to the surgery. Rush treated these submissions as a renewed benefits claim, and it opened another investigation into whether Ms. Moran's now-completed surgery should be covered.

As part of its investigation, Rush sought the opinions of additional experts, and it provided these experts with Ms. Moran's medical records as well as information concerning Dr. Terzis' microneurolysis surgery. The first two opinions obtained by Rush were from Dr. Gerald Harris and Dr. John C. Alexander. These doctors were skeptical of the need for microneurolysis in Ms. Moran's case, but they admitted that they lacked expertise in the area. Rush next consulted with Dr. Susan E. MacKinnon, the Chief of Plastic and Reconstructive Surgery at Washington University School of Medicine in St. Louis. Dr. MacKinnon opined that Dr. Terzis' microneurolysis was unnecessary.

C.

In January 1998, the month before she underwent surgery, Ms. Moran made a written demand to Rush for it to comply with sec. 4-10 of the HMO Act. Under the Act, HMOs are required to provide a mechanism for a review by an independent physician when the patient's primary care physician and HMO disagree about the medical necessity of a treatment proposed by the primary care physician. See 215 ILL. COMP. STAT. ANN. 125/4-10. Section 4-10 further provides that the HMO must provide the proposed treatment in the event that the reviewing physician determines that it is medically necessary. See id. Rush did not act on Ms. Moran's request, and Ms. Moran then filed a complaint in Illinois circuit court seeking a court order requiring Rush to appoint an independent physician to review her claim. Rush removed the action to federal district court on the ground that ERISA completely preempts Ms. Moran's claim.

The district court remanded the case to the

state court. The court noted that preemption is generally a defense and that, under the well-pleaded complaint rule, an anticipated federal defense could not be the basis for removal. Nonetheless, the district court also noted that a "completely preempted" state law claim could be removed, but the court explained, in the ERISA context, only state law claims that conflicted with ERISA's civil enforcement provisions were completely preempted by ERISA. In this case, the district court concluded, Ms. Moran's request for specific performance was not a claim under ERISA's civil enforcement provisions and therefore was not completely preempted. The district court left open the possibility that a claim for reimbursement under sec. 4-10 of the HMO Act, in contrast to a request to have the independent review performed, might be a claim for benefits that would be completely preempted by ERISA's civil enforcement provisions.

D.

Upon remand, the state court ordered Rush to submit to the independent physician review mandated by the HMO Act. The state court reserved ruling on whether ERISA preempted the portion of sec. 4-10 that requires the HMO to cover the procedure in the event that the independent physician determines the procedure is medically necessary. Rush and Ms. Moran agreed to have Dr. A. Lee Dellon, an expert in plastic and reconstructive surgery at Johns Hopkins Medical Center, perform the independent review. After reviewing Ms. Moran's case and the details of the surgery performed by Dr. Terzis, Dr. Dellon concluded that the surgery was medically necessary, including the microneurolysis. Dr. Dellon, however, reported that he would have used loupe magnification, instead of Dr. Terzis' technique, to perform the neurolysis. The procedure proposed by Dr. Dellon would have been less intrusive and less time consuming than the one performed by Dr. Terzis. After Dr. Dellon had completed his independent review, Rush concluded its renewed investigation into whether Ms. Moran's surgery should be covered. Rush's medical director, after reviewing the reports of Dr. MacKinnon and Dr. Dellon along with the reports of the other doctors, concluded that Dr. Terzis' surgery had not been medically necessary. In January 1999, Rush again denied Ms. Moran's benefits claim.

E.

Following the independent review by Dr. Dellon, Ms. Moran asked the state court to require Rush to reimburse her for the surgery. The state court requested that Ms. Moran amend her complaint to

clarify the relief she was seeking. Ms. Moran then filed an amended complaint, the First Amended Complaint, seeking enforcement of sec. 4-10 of the HMO Act and reimbursement for the surgery in the amount of $94,841.27.

After Ms. Moran filed her First Amended Complaint, Rush removed the suit to federal court once again. This time, Rush argued that Ms. Moran's suit was a claim for benefits that was completely preempted and that her claim, therefore, had to be made under ERISA's civil enforcement provision, sec. 502(a), 29 U.S.C. sec. 1132(a). Ms. Moran argued that removal was improper because her claim for reimbursement was a state law claim. The district court, relying on our decision in Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1487 (7th Cir. 1996), held that Ms. Moran's claim for reimbursement properly was recharacterized as a claim for benefits, which meant that her claim was completely preempted because it fell within sec. 502(a)(1)(B) of ERISA's civil enforcement provision.

Turning to the merits, the district court then addressed Rush's contention that ERISA preempted sec. 4-10 of the HMO Act and that, therefore, its provisions did not cabin the discretion of the administrator. The court held that ERISA's "saving clause" did not apply because sec. 4-10 did not meet one of the McCarran-Ferguson factors used to determine whether a law regulates insurance for purposes of that clause. According to the district court, sec. 4-10 of the HMO Act did not transfer or spread policyholders' risk.

Ms. Moran subsequently moved for reconsideration of the district court's ruling. Ms. Moran argued that the district court should reconsider its previous decision in light of the Supreme Court's opinion in UNUM Life Insurance Co. v. Ward, 526 U.S. 358 (1999). In Ward, the Supreme Court held that a state law need not satisfy all three McCarran-Ferguson factors in order for the law to fall within ERISA's saving clause. See id. at 374. The district court denied Ms. Moran's motion for reconsideration on the ground that, even if the saving clause saved sec. 4-10 from preemption, sec. 4-10 was preempted nonetheless because it fell within the "deemer clause" exception to the saving clause. Under the deemer clause, the district court held, ERISA preempted sec. 4-10 of the HMO Act "[b]ecause the Illinois HMO Act has the effect of directly regulating employee benefit plans rather than an insurance company." R.53.

F.

Ms. Moran amended her complaint a second time in

April 1999, ostensibly to state a claim for reimbursement under sec. 4-10 of the HMO Act and to avoid stating a claim for benefits under ERISA. In the alternative, the Second Amended Complaint also alleged ERISA claims under sec. 502(a)(1)(B) for breach of contract and for breach of fiduciary duty. The parties then filed cross motions for summary judgment, and the district court granted summary judgment to Rush. The district court explained that, regardless of Ms. Moran's efforts to plead only state law claims, she still was making a claim for benefits under sec. 502(a)(1)(B) because she was seeking reimbursement for her surgery. Proceeding to its analysis of Ms. Moran's claim for benefits, the district court noted that the certificate governing Ms. Moran's benefits gave Rush the "broadest possible discretion" to interpret the plan's terms and to make benefits determinations. R.79 at 10 (citation omitted). Given the standard of review for plans bestowing this kind of discretion, the district court held that Rush was entitled to summary judgment because it had not abused its discretion or acted arbitrarily in denying Ms. Moran's claim for benefits.

II
DISCUSSION
A.

A district court's preemption ruling is a question of law that we review de novo. See Carpenters Local Union No. 26 v. United States Fidelity & Guar. Co., 215 F.3d 136, 139 (1st Cir. 2000); Burlington N. & Santa Fe Ry. v. Doyle, 186 F.3d 790, 794 (7th Cir. 1999). We also review de novo the propriety of the removal of a state action to federal court. See Tylka v. Gerber Prods. Co., 211 F.3d 445, 447 (7th Cir. 2000). Likewise, we review de novo a district court's grant of summary judgment. See Anstett v. Eagle-Picher Indus., Inc., 203 F.3d 501, 503 (7th Cir. 2000). It is appropriate to grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

B.

A defendant may remove to federal court actions originally brought in a state court only when those actions fall within the federal court's original jurisdiction, see 28 U.S.C. sec. 1441(a), which would include "federal question" jurisdiction over cases "arising under the

Constitution, laws, or treaties of the United States," 28 U.S.C. sec. 1331. Ms. Moran maintained throughout the proceedings in the district court that removal was improper because her claims based on sec. 4-10 of the HMO Act do not arise "under the Constitution, laws, or treaties of the United States." Ms. Moran also makes this argument on appeal.

As we explained in Speciale v. Seybold, 147 F.3d 612 (7th Cir.), cert. denied, 525 U.S. 1017 (1998) "[t]he determination of jurisdiction on removal involving an ERISA issue is based upon the well-pleaded complaint rule, the ERISA 'complete preemption' exception to that rule and the defense of 'conflict preemption' under ERISA." Id. at 614. Under the well-pleaded complaint rule, we look to the state court complaint and not to the defendant's response to determine whether the plaintiff's claim falls under federal question jurisdiction. See, e.g., Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1486 (7th Cir. 1996). "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). A defendant's federal defense to a claim arising under state law, therefore, "does not create federal jurisdiction and therefore does not authorize removal." Blackburn v. Sundstrand Corp., 115 F.3d 493, 495 (7th Cir.), cert. denied, 522 U.S. 997 (1997).

There exists, however, an exception to the well-pleaded complaint rule for state law claims that have been "completely preempted" by Congress. See Speciale, 147 F.3d at 615. This so-called "complete preemption" doctrine really "is not a preemption doctrine but rather a federal jurisdiction doctrine." Lister v. Stark, 890 F.2d 941, 943 n.1 (7th Cir. 1989). Even though a complaint may not mention a federal basis of jurisdiction, the complete preemption doctrine "permits 'recharacterization' of a plaintiff's state law claim as a federal claim so that removal is proper." Speciale, 147 F.3d at 615 (quoting Lister, 890 F.2d at 943).

In Metropolitan Life, the Supreme Court held that the civil enforcement provision of ERISA, sec. 502(a), completely preempts state law causes of action that fall within the scope of that provision. See 481 U.S. at 67; Speciale, 147 F.3d at 615. One of ERISA's civil enforcement provisions, sec. 502(a)(1)(B), allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights

to future benefits under the terms of the plan." 29 U.S.C. sec. 1132(a)(1)(B).

In Jass, we identified three factors to be used to determine whether a state law claim should be recharacterized as an ERISA claim under sec. 502(a): (1) "whether the plaintiff is eligible to bring a claim under that section"; (2) "whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via sec. 502(a)"; and (3) "whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." 88 F.3d at 1487 (quotation marks and citations omitted). When all three factors are present, the state law claim is properly recharacterized as an ERISA claim under sec. 502(a). See id. at 1489-90.

We agree with the district court that Ms. Moran's state law claims are properly recharacterized as claims for benefits under sec. 502(a)(1)(B) of ERISA and, therefore, are completely preempted. Ms. Moran's claims certainly satisfy the first two Jass factors. First, she is a plan participant and is, therefore, eligible to bring an action under sec. 502(a)(1)(B). Second, she is seeking to enforce her right to a benefit under her plan. Ms. Moran seeks payment for the surgery. Finally, Ms. Moran's claims meet the third Jass factor because they require an interpretation of the insurance contract governing Ms. Moran's right to the independent review. As we explained in Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849 (7th Cir. 1997), Illinois laws automatically are incorporated into all contracts of insurance in that state. See id. at 861. Thus, the provisions of sec. 4-10 of the HMO Act have been incorporated into Ms. Moran's insurance contract. Therefore, the extent and the enforceability of Ms. Moran's right to an independent review necessarily requires an examination of the contract. Thus, Ms. Moran's claims properly are recharacterized as claims for benefits under ERISA's civil enforcement provision, sec. 502(a)(1)(B), and removal was proper.

C.

Now that we have determined that removal of Ms. Moran's state court claims based on sec. 4-10 of the HMO Act was proper, we turn to Rush's preemption defense.

The comprehensive scope of ERISA extends to the regulation of employee welfare benefit plans providing "medical, surgical, or hospital care or benefits" for plan participants "through the purchase of insurance or otherwise." 29 U.S.C. sec. 1002(1); see New York State Conference of

Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 650-51 (1995). As the Supreme Court explained in Travelers, ERISA "does not go about protecting plan participants and their beneficiaries by requiring employers to provide any given set of minimum benefits." Travelers, 514 U.S. at 651. Rather, the statute "controls the administration of benefit plans." Id. "It envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme." Id.

As provided by sec. 514 of the statute, ERISA also preempts some state laws. Specifically, ERISA's preemption clause, sec. 514(a), "broadly" states that state laws are preempted "to the extent that those laws 'relate to any employee benefit plan.'" UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 363 (1999) (quoting sec. 514(a), 29 U.S.C. sec. 1144(a)). Section 514, however, contains a saving clause, sec. 514(b)(2)(A), which qualifies sec. 514(a) by excepting state laws from preemption when those laws "regulate[ ] insurance." 29 U.S.C. sec. 1144(b)(2)(A); see Ward, 526 U.S. at 367. Still another clause in sec. 514 serves as an exception to the saving clause exception: the deemer clause, sec. 514(b)(2) (B), "makes clear that a state law that 'purports to regulate insurance' cannot deem an employee benefit plan to be an insurance company." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987) (quoting sec. 514(b)(2)(B), 29 U.S.C. sec. 1144(b)(2)(B)).

We address each clause in turn.

1.

For purposes of sec. 514(a), a state law "relates to" a covered employment benefit plan if it either has (1) "a connection with" or (2) "reference to" such a plan. E.g., California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997); Travelers, 514 U.S. at 656; Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). We agree with the parties that sec. 4-10 of the HMO Act "relates to" ERISA plans because its provisions have a connection with such plans.

To determine whether sec. 4-10 of the HMO Act "relates to" ERISA plans, we begin by looking at the state statute. Section 4-10 provides, in relevant part:
Each Health Maintenance Organization shall provide a mechanism for the timely review by a physician holding the same class of license as the primary care physician, who is unaffiliated with the Health Maintenance Organization, jointly selected by the patient (or the patient's next of

kin or legal representative if the patient is unable to act for himself), primary care physician and the Health Maintenance Organization in the event of a dispute between the primary care physician and the Health Maintenance Organization regarding the medical necessity of a covered service proposed by a primary care physician. In the event that the reviewing physician determines the covered service to be medically necessary, the Health Maintenance Organization shall provide the covered service.

215 ILL. COMP. STAT. ANN. 125/4-10. From the text of the HMO Act it is apparent that the law does not make "reference to" an ERISA-governed employee benefit plan; no mention is made of ERISA plans, and the law applies to HMOs regardless of whether a patient's coverage is through an ERISA plan. Cf. Travelers, 514 U.S. at 656 (noting that the law in question in that case did not make "reference to" ERISA plans because the law's provisions applied regardless of whether the coverage was "secured by an ERISA plan, private purchase, or otherwise").

State laws that "risk subjecting [ERISA] plan administrators to conflicting state regulations" undoubtedly have a "connection with" ERISA plans within the meaning of sec. 514(a). FMC Corp. v. Holliday, 498 U.S. 52, 59 (1990). Here, sec. 4-10 of the HMO Act requires HMOs, including those that are service providers for ERISA plans, to provide an independent review mechanism and, should the independent reviewer agree with the primary care physician, to pay claims that otherwise might not be paid under the plan. As the Court explained in Travelers, state laws that "mandate[ ] employee benefit structures or their administration" fall within the ambit of ERISA's preemption clause. Travelers, 514 U.S. at 658. Section 4-10 of the HMO Act has an effect on how benefit determinations are made and, thus, squarely falls within ERISA's preemption clause.

2.

As we already have noted, however, a state law that "relates to" ERISA plans may nonetheless avoid preemption if that law "regulates insurance" within the meaning of ERISA's saving clause, sec. 514(b)(2)(A), 29 U.S.C. sec. 1144(b)(2)(A). See Ward, 526 U.S. at 363. To determine whether a state law "regulates insurance" within the meaning of the saving clause, we first ask "whether, from a 'common-sense view of the matter,' the contested prescription regulates insurance." Id. at 367 (quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 (1985)). Next, we consider "three factors employed to determine

whether the regulation fits within the 'business of insurance' as that phrase is used in the McCarran-Ferguson Act." Id. (citing 15 U.S.C. sec. 1011 et seq.). Of these three factors, the first is "whether the practice has the effect of transferring or spreading a policyholder's risk." Id. (quotation marks and citation omitted). The second factor is "whether the practice is an integral part of the policy relationship between the insurer and the insured." Id. (quotation marks and citation omitted). And the third is "whether the practice is limited to entities within the insurance industry." Id. (quotation marks and citation omitted). A state law may fall within the saving clause even if it cannot satisfy all three of the McCarran-Ferguson factors. See id. at 373-74 (stating that the McCarran-Ferguson factors are "guideposts" and rejecting the argument that all three are required).

We conclude that sec. 4-10 of the HMO Act falls within the saving clause because it "regulates insurance" under a common sense understanding and because it meets at least two of the McCarran-Ferguson factors. As a matter of common sense, sec. 4-10 of the HMO Act regulates insurance because the law is directed at the HMO industry as insurers. We previously have explained that HMOs "are insurance vehicles under Illinois law," Anderson v. Humana, Inc., 24 F.3d 889, 892 (7th Cir. 1994), and sec. 4-10 of the HMO Act is aimed exclusively at members of the insurance industry, even if the law does not affect the entire insurance industry in Illinois.

Section 4-10 of the HMO Act further regulates insurance under a common sense understanding because the Act's provisions go to the core of the relationship between the insurer and the insured. "It is fundamental insurance law that 'existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and, together with settled judicial constructions thereof, become a part of the contract as much as if they were actually incorporated therein.'" Plumb, 124 F.3d at 861 (quoting 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d sec. 19:1, at 19-2 to 19-4 (1996)). The provisions of sec. 4-10 of the HMO Act, therefore, are substantive terms of all insurance policies in Illinois by operation of law. When a law mandates a contract term between parties, whether that term is characterized as creating a "procedural" or "substantive" right, that law is "integral" to the insurer/insured relationship. Ward, 526 U.S. at 374-75 & n.5.

Having determined that sec. 4-10 of the HMO Act

regulates insurance under a common sense understanding, we look next to the McCarran-Ferguson factors. Section 4-10 clearly satisfies the second and third McCarran-Ferguson factors./3 The second McCarran-Ferguson factor is satisfied because sec. 4-10 creates a mandatory term in the insurance contract and, thus, "changes the bargain between insurer and insured," id. at 374. Moreover, sec. 4-10 satisfies the third McCarran-Ferguson factor because, as we already have explained, the section applies only to HMOs acting as insurers. Thus, the law is limited to entities within the insurance industry.

3.

   The "deemer clause," sec. 514(b)(2)(B), is an exception to the saving clause exception. A law saved from preemption by the saving clause may still be preempted if it falls within the deemer clause. See FMC Corp., 498 U.S. at 61. Under this clause, state laws that purport to regulate insurance by "deeming" a plan to be an insurance company are outside of the saving clause and are subject to preemption. See id.

   The "deemer clause" is inapplicable to this case. In FMC Corp., the Supreme Court explained that the deemer clause exempts "self-funded ERISA plans from state laws that 'regulate insurance' within the meaning of the saving clause." Id. The ERISA plan at issue before us, however, is not a self-funded plan; it is an insured plan. The Supreme Court's interpretation of the deemer clause "makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts." Id. at 64. Rush is the insurer to the ERISA plan at issue in our case, and therefore the deemer clause does not apply. See Ward, 526 U.S. at 367 n.2 (stating that, because the plan at issue in that case was not self-insured, the deemer clause was "not at issue"); Plumb, 124 F.3d at 859 n.6 (explaining that, because the plan at issue was an insured plan, the deemer clause was inapplicable).

4.

   A state law that falls within the saving clause nevertheless may be preempted if that law conflicts with a substantive provision of ERISA. See Pilot Life, 481 U.S. at 57. Rush argues that sec. 4-10 of the HMO Act conflicts with sec. 502(a)(1)(B) of ERISA's civil enforcement scheme. That provision establishes the right of plan participants or beneficiaries to sue "to recover benefits" under the plan, "to enforce . . . rights" under the plan, or "to clarify . . .

rights" under the plan. 29 U.S.C. sec. 1132(a)(1)(B). Rush invites our attention to a decision from the Court of Appeals for the Fifth Circuit, Corporate Health Insurance, Inc. v. Texas Department of Insurance, 215 F.3d 526 (5th Cir. 2000), in which the court considered an independent review statute from Texas that is quite similar to sec. 4-10 of Illinois' HMO Act.

The Texas independent review statute, like sec. 4-10 of the HMO Act, essentially "allow[s] a patient who has been denied coverage to appeal to an outside organization." Id. at 537. The law requires HMOs to provide a mechanism for patients to obtain an independent review of the need for a course of treatment. Specifically, the court explained, the Texas statute states that patients may appeal "adverse determinations," which are defined as determinations that a health care service is not "medically necessary" or "appropriate," to an independent reviewer. Id. (quotation marks and citations omitted). Moreover, under the Texas statute, the HMO must "comply" with the independent reviewer's determination of medical necessity. Id. (quotation marks and citation omitted).

Our colleagues in the Fifth Circuit took the view that the Texas law conflicted with ERISA's civil enforcement scheme and therefore was preempted. The court concluded that Texas' independent review statute was preempted, even though it regulated insurance within the meaning of the saving clause, because the statute's provisions were contrary to the civil enforcement scheme established in sec. 502(a). See id. at 539. According to the court, the Texas independent review statute "establish[ed] a quasi-administrative procedure for the review of [a decision to deny benefits] and [bound] the ERISA plan to the decision of the independent [reviewer]." Id. "This scheme," the court held, "creates an alternative mechanism through which plan members may seek benefits due them under the terms of the plan--the identical relief offered under [sec. 502(a)(1)(B)]." Id.

In denying the petition for rehearing, the court further explained that, in its view, the Texas' independent review provision "substitutes the medical judgment of a third party physician for the HMO's, or treating physician's, judgment as to medical necessity." Corporate Health Ins., Co. v. Texas Dep't of Ins., 220 F.3d 641, 644 (5th Cir. 2000). In the view of the court, "the law is clear that Texas cannot provide a supplementary claims process by binding the HMO to pay for a treatment that is simply a second opinion on medical necessity about which reasonable doctors might reach differing conclusions." Id. at 645.

Although the court left open the possibility that an independent review statute might not run afoul of the exclusivity of ERISA's civil enforcement provisions if the independent review mechanism "regulate[d] the minimal quality level of medical care provided for covered conditions," the court explained that the Texas statute was "plainly a state regime for reviewing benefit decisions and not a system for implementing a mandated term of insurance regulating a minimal standard of care." Id.

In our view, sec. 4-10 of the Illinois HMO Act cannot be characterized as creating an alternative remedy scheme that conflicts with sec. 502(a). The independent review scheme created by the Illinois statute is not tantamount to the relief offered under sec. 502(a)(1)(B). As we already have explained, the provisions of sec. 4-10 of the HMO Act have been incorporated into Ms. Moran's insurance contract./4 Thus, a suit by her to enforce the HMO Act's provisions is simply a suit to enforce the terms of the plan-- precisely the sort of suit that is contemplated by sec. 502(a)(1)(B) "to enforce rights" and "to recover benefits" under the plan. Notably, the "sole launching ground" for Ms. Moran's claims to enforce sec. 4-10 of the HMO Act remains sec. 502(a). Ward, 526 U.S. at 377./5 Rather than providing an alternative remedy for Ms. Moran to recover benefits, sec. 4-10 of the HMO Act simply establishes an additional internal mechanism for making decisions about medical necessity and identifies who will make that decision in those instances when the HMO and the patient's primary care physician cannot agree on the medical necessity of a course of treatment. Rather than eliminate the review procedures established by the plan, it simply adds to the contract, by operation of law, an additional dispute resolving mechanism when, despite exhausting the internal review system otherwise provided by the plan, there remains a disagreement between the plan's own experts and the attending physician on the issue of medical necessity.

Nor does the addition of this statutorily mandated provision in the contract alter impermissibly the deferential standard of review required by the language of the plan. Certainly, the administrator's failure to abide by the decision of the outside medical consultant on the issue of medical necessity would constitute an abuse of discretion. The statutorily required provision of the plan requires that the decision of the independent review physician be followed, and it would be an abuse of discretion on the part of the administrator not to observe the command of this provision. However, the different outcome is not because of a change in the

standard of review but because of a change in the provisions of the contract./6

We also believe that it is inaccurate to say that sec. 4-10 of the HMO Act conflicts with the fiduciary role of the administrator of the plan. At the outset, it is important to note that the provisions of sec. 4-10 of the HMO Act apply only to disputes about whether a covered service is medically necessary in a given case. Other issues, most notably the issue of whether a particular treatment is covered, do not fall within the ambit of the section. Moreover, as we have already noted, even with respect to medical necessity decisions, there is nothing in sec. 4-10 of the HMO Act that in any way abrogates the pre-existing fiduciary obligations of the administrator. Section 4-10 of the HMO Act merely adds an additional obligation that the fiduciary must observe.

In sum, sec. 4-10 of the HMO Act requires entities in the business of insurance to provide additional safeguards to preserve the integrity of the decision-making process. Following the example of the Supreme Court of the United States, we believe that such requirements ought to be treated as mandated contract terms and treated as part of the insurance contract. See Ward, 526 U.S. at 375-76; see also Plumb, 124 F.3d at 861. Unlike the situation in Pilot Life, we are not asked here to recognize a state common law doctrine of general applicability but a specific statutory provision aimed at the regulation of the insurance industry. As in Ward, we simply accept the state-mandated provision as a provision of the plan and then enforce the contract./7

D.

In this case, there no longer remains a question of material fact that would preclude judgment as a matter of law. As we already have explained, Ms. Moran's claim for reimbursement really is a claim for benefits made under sec. 502(a)(1)(B) to enforce her rights under the plan. Moreover, sec. 4-10 of the HMO Act, as incorporated into the plan by operation of law, entitled Ms. Moran to the independent review conducted by Dr. Dellon. Dr. Dellon determined, in agreement with Ms. Moran's primary care physician, that the surgery performed by Dr. Terzis was "medically necessary." Thus, Ms. Moran is entitled to summary judgment in her favor.

Conclusion

For the foregoing reasons, we reverse the judgment of the district court.

REVERSED

/1 The State of Illinois has intervened to defend the HMO Act. We also have the benefit of three amicus curiae briefs: one from the United States Department of Labor; one from the American Medical Association, the Illinois State Medical Society, and the American College of Legal Medicine; and one from the Illinois State Chamber of Commerce and the Employment Law Council of Illinois.

/2 The plan documents provide that a service is "medically necessary" if Rush determines that it meets all of the following criteria:

(a)  It is furnished or authorized by a Participating Doctor for the diagnosis or the treatment of a Sickness or Injury or for the maintenance of a person's good health.

(b)  The prevailing opinion within the appropriate specialty of the United States medical profession is that it is safe and effective for its intended use, and that its omission would adversely affect the person's medical condition.

(c)  It is furnished by a provider with appropriate training, experience, staff and facilities to furnish that particular service. . . .

R.1-1, Ex.A at 21.

/3 Because at least two of the McCarran-Ferguson factors are secured, we need not decide whether sec. 4-10 of the HMO Act transfers or spreads risk. Cf. Ward, 526 U.S. at 374.

/4 Indeed, aside from the fact that the Illinois statute automatically became part of the contract by operation of law, the certificate defining Ms. Moran's rights under the plan incorporated the provisions of sec. 4-10 of the HMO Act. Specifically, the certificate provides that "[i]f the provisions of this Certificate do not conform to the requirements of any state or federal law that applies to the Certificate, the Certificate is automatically changed to conform with the requirements of that law." R.1-1, Ex.A, at 34.

/5 Although Ms. Moran's pleadings in this litigation purported to assert claims under state law, we already have explained that her claims premised on sec. 4-10 of the HMO Act must be recharacterized as claims made under sec. 502(a)(1)(B).

/6 We note that, in this case, the reviewing

physician employed the definition of medical necessity found in the provisions of the plan. Although the parties do not bring the issue to us, and we therefore need not decide it, the use of the plan's definition demonstrates even further that sec. 4-10 of the HMO Act does not totally disrupt the pre-existing terms of the plan but merely affords the participant an additional protection.

/7 To the degree that our views differ from those of the Fifth Circuit, we find ourselves in respectful disagreement and therefore have circulated this opinion under Circuit Rule 40(e). The opinion has been circulated among all judges of this court in regular active service. A majority of the judges in active service did not wish to rehear the case en banc. Judges Posner, Coffey, Easterbrook and Diane P. Wood voted to grant rehearing en banc.

Posner, Circuit Judge, with whom Circuit Judges Coffey, Easterbrook, and Diane P. Wood join, dissenting from denial of hearing en banc. This case is well worth the attention of the full court. The panel's decision creates a square conflict with another circuit, is very probably unsound, and will affect an enormous number of cases. It is also a single-issue case, and the issue is one of law, so that en banc consideration would be unlikely to create a fractured result or bog the court down in factual questions. Rarely have we had so strong a candidate for en banc review.

The decision holds that ERISA does not preempt an Illinois statute that requires HMOs to submit to review by an independent physician the decision by the HMO not to cover a treatment deemed medically necessary by the patient's physician. 215 ILCS 125/4-10. An ERISA medical-benefits plan sponsored by the employer of the plaintiff's husband had delegated the provision of the services to which the plan participants were entitled to an HMO. The plan did not require the HMO to submit disagreements with a plan participant's doctor to arbitration by an independent third party. The Illinois statute, unless preempted by ERISA insofar as the statute's application to ERISA plans is concerned, will thus effect a substantial change in the employer's plan. The state law is conceded to relate to ERISA plans and so it is preempted unless the law merely regulates insurance. See 29

U.S.C. sec.sec. 1144(a), (b)(2)(A). In UNUM Life Ins. Co. v. Ward, 526 U.S. 358 (1999), the principal basis for the panel's decision, the Supreme Court held that a state law that limited insurance companies' right to ignore late claims when the lateness did not harm the insurance company merely regulated insurance and therefore could lawfully be applied to ERISA plans. As the Fifth Circuit pointed out in the decision with which the panel has gone into conflict, Corporate Health Insurance, Inc. v. Texas Dept. of Insurance, 215 F.3d 526 (5th Cir. 2000), the "notice prejudice" law held not preempted in Ward was a typical regulation of insurance rather than anything either special to ERISA plans or likely to be mischievous in its impact on those plans. All the law provided was that an insurer couldn't disregard late claims unless it had been harmed by the lateness.

The law in this case, like the materially identical law held preempted by the Fifth Circuit, is not a general regulation of insurance, or even of health insurance; it is a regulation of HMOs, which are the service providers under a great many ERISA medical-benefits plans. The law establishes a system of appellate review of benefits decisions that is distinct from the provision in ERISA for suits in federal court to enforce entitlements conferred by ERISA plans. 29 U.S.C. sec. 1132(a)(1)(B). By doing so, the law interferes with the federally specified system for enforcing such entitlements. The suit for breach of contract envisaged by the statute becomes a suit for judicial review of the independent physician's decision. The Illinois law thus adds heavy new procedural burdens to ERISA plans. These burdens do not come without cost. The expense of an arbitration by the independent physician could easily equal the expense of the medical treatment that the HMO had refused to authorize. Piling on costs in the administration of ERISA plans will shrink benefits and deter some employers from offering health insurance at all. In addition, the Illinois law obviously is intended (responding to the recent torrent of criticisms of HMOs) to tilt the administration of those plans in favor of participants by giving them an additional remedy while not giving any additional remedy to the plan. The law undermines the statutory purpose of federal uniformity in the administration of ERISA plans. If such laws are permissible, the rights of participants in an ERISA plan will change as they are transferred by their employer from state to state, even though they are nominally under the same plan.

Although the panel's opinion is long, it does not respond to the concerns just expressed,

although they were forcefully argued in the HMO's brief and in an amicus brief supporting the HMO. All that the panel can find to say in defense of its startling decision, except that it thinks it supported by Ward, yet without appreciating the force of the Fifth Circuit's distinction of that case, is that the Illinois law makes the physician-review provision a part of the ERISA plan and so does not disturb the exclusivity of ERISA's scheme for the enforcement of the rights that ERISA plans confer on participants and beneficiaries. Under the panel's view, then, if the plan does not submit a disagreement to review by the independent physician, the participant can sue the plan for a violation of its terms. This is just a facon de parler. It invites states to evade the preemptive force of ERISA simply by deeming its regulations of ERISA plans to be plan terms. It would authorize a state to require ERISA plans to double their benefits. I am sure the panel would not go so far as to permit so transparent an evasion of ERISA's preemption clause, but the opinion contains nothing that would enable the panel to distinguish that case. Far from being compelled by Ward, the panel's opinion is in tension with Pegram v. Herdrich, 120 S. Ct. 2143 (2000), which it does not cite. Although Pegram held that combined treatment-eligibility decisions by an HMO are not fiduciary decisions under ERISA, it did not doubt that ERISA applied to HMO-managed ERISA plans; the panel, by contrast, seems to think ERISA inapplicable to such plans.

There is another unresolved tension in the panel's opinion. The opinion appears to depend on two propositions: first, that the Illinois law regulates insurance rather than ERISA plans and thus is not preempted; second, that by virtue of Illinois law the requirement of independent physician review is written not only into an insurance contract but also into the plan itself, which makes the requirement enforceable in federal court. The two propositions are incompatible. If the statute merely regulates insurance and therefore is not preempted, how can it be part of an ERISA plan and enforceable in federal court? If, on the other hand, the requirement imposed by the statute is and must be incorporated into the plan, then Illinois has done more than merely regulate the contents of an insurance policy. It has regulated the contents of an ERISA plan--which means that its law is preempted.